Peck v. Parchen.

P██K ET AL. v. PARCHEN ET AL.

1. **Practice**: CONTINUANCE. In ruling upon a motion for continuance, it is proper for the court to take into consideration all the circumstances of the case, such as the length of time it has been pending, the number of continuances, and at whose application granted.

2. ———: PLEADING: PARTIAL DEFENSE. Where facts which constitute a partial defense only are pleaded as a full defense to an action, the allegation may properly be stricken from the pleading as immaterial.

3. **Evidence**: WHEN SECONDARY: ACCOUNT. It is not competent to prove an account by copies attached to a deposition, when the books of original entry can be produced.

4. ———: IMPEACHING WITNESS. When it is sought to impeach a witness by the production of a paper written by him, the paper must be shown the witness and he must be asked if he wrote it.

5. **Parties**: MEMBERS OF PARTNERSHIP. Where an action is brought against a defendant as a member of a firm the court may properly allow the other partner to enter appearance as a party defendant.

*Appeal from Woodbury Circuit Court.*

THURSDAY, OCTOBER 9.

THE plaintiffs, C. K. Peck, surviving partner of the firm of Durfee & Peck, and O. B. Taylor, Geo. H. Durfee and Charles B. Taylor, executors of the estate of E. H. Durfee, deceased, late member of the firm of Durfee & Peck, on the 21st day of April, 1875, filed their petition against the defendant, Henry M. Parchen, claiming the sum of $1,550 balance on account for the transportation of goods by the firm of Durfee & Peck, on the steamboat Nellie Peck, in 1871, for the firm of Parchen & Paynter, and for money advanced by Durfee & Peck to pay railroad charges on said goods. An attachment was issued and levied upon property of the defendant Parchen. The defendant Parchen filed a motion to strike from the petition all the parties plaintiff except C. K. Peck, sole surviving member of the firm of Durfee & Peck, on the ground that the executors of Durfee were improperly joined as plaintiffs. This motion the court sustained. The defendant Parchen filed his answer deny-

ing all indebtedness, averring payment and settlement, and in the fourth count of his answer, by way of counter-claim, setting up a judgment obtained in Montana by Henry M. Parchen and Woodman S. Paynter against C. K. Peck, in his capacity as sole surviving partner of Durfee & Peck. To this fourth count of the answer the plaintiff demurred on the ground that the judgment so set up by defendant is in favor of H. M. Parchen and W. S. Paynter, and no right of action exists in favor of Parchen thereon ; and that there is a defect of parties plaintiff in said counter-claim in this, that W. S. Paynter is a joint owner with defendant of said judgment and is not a party to this action. This demurrer was overruled. The plaintiff excepted. After this demurrer was overruled, said W. S. Paynter, against the objections of plaintiff, was allowed to enter his appearance in the cause, and defend therein.

Plaintiff filed a reply to the affirmative allegations in the answer, and averred in the second count of the reply that said alleged settlement was made and allowed through fraud and deceit in this: that James Arnoux, who acted for Parchen and Paynter in receiving the goods and weighing the same, falsely and fraudulently returned to the clerk of said boat that said goods weighed only 97,081 pounds, when, in fact, they weighed 120,000 pounds, as billed; and falsely and fraudulently claimed and represented that there was a shortage and damage to said goods of $604.54, while, in fact, all the goods were delivered by said boat and received by defendant's agent in good order, and that the clerk of said boat, relying on said representations, allowed said claim for damage and shortage, and the settlement then made was based upon the false and fraudulent representations of said Arnoux as to the weight of said goods and false claim for damage and shortage.

For reply to the counter-claim, set up in the fourth count of the answer, plaintiff averred that within the time allowed by the law of Montana, he had taken and perfected an appeal from said judgment in all respects as required by law, and said cause was then pending in the Supreme Court of Montana, and defendants ought not to prosecute said action on said judgment, and that after said judgment was rendered, money due the

plaintiff in Montana to the amount of $1,400 was garnished, and is now held under said process, and defendant cannot now prosecute suit upon said judgment. The defendant moved to strike out these divisions of the reply as immaterial and irrelevant. The motion was sustained. The plaintiff excepted. The divisions of the reply thus stricken out are paragraphs two, four and five. Thereupon the plaintiff, as an amendment to his reply, filed a substitute for the second paragraph thereof.

At the September term 1877, plaintiff filed motion and affidavits for continuance, which were overruled. The plaintiff at the time excepted. The cause was tried to the court without a jury. The court made its findings of facts and conclusions of law, and rendered judgment against the plaintiff on his petition, and in favor of the defendants on their counterclaim for the sum of $2,832.25, and costs. Plaintiff filed a motion for a new trial which was overruled. The plaintiff appeals.

*Joy & Wright*, for appellant.

*S. M. Marsh* and *R. J. Chase*, for appellees.

DAY, J.—I. The affidavit for a continuance, in addition to a statement of the facts expected to be proved by the absent witness, and the grounds of belief that plaintiff would be able to procure his testimony by the next term of the court, is as follows: "C. K. Peck, sworn, says he is the plaintiff in this action; that Grant Marsh, of Yankton, Dakota Territory, is a material witness for him, without whose testimony it will not be safe for him to proceed to trial at this term of court; that plaintiff has a good and meritorious cause of action against defendant; that at each and every term of court at which this cause has been ready for trial, said Marsh has been accessible and his testimony procurable, and at last term of this court said Marsh was present to testify in said cause, and remained here until said cause was continued; that at that time said Marsh intended, and stated to affiant that he expected to be engaged at Yankton during the entire summer season, and had

a ferry boat run up the river to Yankton to use at said point; that, after said last term of court, said Marsh went east and was traveling around in different places in the country, and expected to return to Yankton early in the spring, and remain there; and he did return about the time navigation opened on the Missouri River, and he at once, without affiant's knowledge, went up the river to Fort Pierre with his ferry boat, and left said boat at Pierre with other parties, and started on his return to Yankton, but was stopped at Bismark, and there employed on the boat Rosebud to go up the Yellowstone river; that affiant had no knowledge that said Marsh was going on said steamer until he had left, and that he was then informed that said steamer would return from said trip, and said Marsh would return to Yankton before this August term, 1877; that during all the time said steamer has been up the Yellowstone said Marsh has not been at any point where deponent could take his deposition, and said Marsh, since he went up the river with ferry boat to Pierre, has not been at any point a sufficient length of time to take his deposition; that deponent had been at Yankton several times during the season, and inquired of Marsh's friends and family when he would return, and they always informed him he would return before August 15th; that most of the steamers that went up the Missouri and Yellowstone rivers have returned, but said Rosebud, on which Marsh is captain, being of light draught, was ordered by government in past two weeks to remain longer up the Yellowstone on government duty; that deponent, on the 31st ult., went to Yankton to ascertain in reference to the return of Marsh, and was then, for first time, informed that Marsh would be detained up the river until October 1st; that deponent relied on said Marsh being and remaining at Yankton the present season, where his family resides, and did not know he was going away until he had left, and there has been no time since he left that deponent could have his deposition taken, as he has been traveling all the time on the river and away from any point where depositions could be taken, and deponent relied upon his return to Yankton before this, as his family expected him to return." An amendment to this affidavit was filed, but

it states no material additional facts. The overruling of the
application for a continuance is assigned as error.
The granting or refusing a motion for a continu-
ance necessarily involves much of judicial discretion. *Boone
v. Mitchell*, 33 Iowa, 45. This action was commenced in
April, 1875. The application for continuance was made in
September, 1877. At the preceding term of the court the
cause was continued, and for aught that the record discloses, it
was continued upon the application of the plaintiff. It was
proper for the court to take into consideration all the circum-
stances of the case, the length of time the cause had been pending,
the number of continuances, and upon whose application ob-
tained. The witness, Marsh, was known by plaintiff to be a
non-resident, and yet plaintiff took no steps to take his deposi-
tion, but relied upon his promise to be present to testify in
the case. A party is held to more care and diligence to
procure by deposition the testimony of a witness who is a non-
resident, and beyond the process of the court, than he is re-
quired to employ in the case of a resident witness, who is not
likely to be beyond the process of the court. *Fiske v. Berry-
hill*, 10 Iowa, 203. The case of *Boone v. Mitchell*, 33 Iowa,
45, is very much like the present one. The record does not
disclose any abuse of judicial discretion in overruling the mo-
tion for continuance.

1. PRACTICE: continuance.

II. It is insisted that the court erred in striking from plain-
tiff's reply the paragraph alleging, as a defense to the counter-
claim on the judgment recovered in Montana Territory, that
an appeal had been duly and legally perfected to the Supreme
Court and was then pending. The presumption, as counsel for
both parties to this suit claim, is that the laws of Montana
upon this subject are the same as our own. Section 3186 of
the Code provides : "An appeal shall not stay proceedings on
the judgment or order, or any part thereof, unless the appel-
lant shall cause to be executed   *  *.  *  .*  *   a bond," etc,
the reply stricken out does not allege that any bond, such as
above contemplated, was filed. This count of the reply fails to
allege a state of facts under which proceedings upon the judg-
ment shall be stayed, and it was not error to strike it out.

III. The plaintiff also alleged in his reply that after the rendition of said judgment execution issued, and, under the same, money due plaintiff upon a judgment rendered in his favor against J. A. Vail, in the District Court of said Territory, for about $1,400 was garnished, and is now held under said process, and by reason thereof defendants cannot now prosecute their suit upon said judgment. The appellant assigns as error the striking out of this allegation of the reply. The judgment sued upon is for the sum of $2,403.53. The reply alleges that money due the plaintiff to the amount of $1,400 was garnished, and this is pleaded as an entire defense to the counter-claim, and is alleged as a reason why defendant connot now sue upon the judgment. While proceedings for the satisfaction of a judgment are going on, and property sufficient to satisfy it is held under execution, the judgment cannot be sued upon. Freeman on Judgments, section 475. *Green v. Burke*, 23 Wendell, 489 (501). If this portion of the reply had been pleaded as a partial defense, it would have constituted a good defense *pro tanto*. But it was pleaded as a full defense, which it did not constitute, and hence there was no error in striking it out. *Davenport Gas Light & Coke Co. v. The City of Davenport*, 15 Iowa, 6 (19); *Martin v. Swearengen*, 17 Id., 346.

IV. The deposition of A. D. Rodefer was taken on the part of plaintiff at Leavenworth. Rodefer was the clerk on the boat that transported the goods in question, and had charge of and kept all the books of account, including the account of goods received for transportation for defendants, the moneys paid out as railroad charges on said goods, and was present when the goods were discharged at their destination. This witness was examined as follows:

"*Ques.* By whom were the books kept, and what accounts were kept, and what entries made in said books?"

"*Ans.* I kept the books on said Nellie Peck, in 1871; there was a freight register of all goods received and discharged, passenger register of all passengers, a portage book of the crew's wages, cash book, fuel book in which we kept account of fuel burned on trip and from whom purchased."

This question and answer were objected to on the following grounds; "Because said evidence sought to be admitted is incompetent, irrelevant and immaterial, and not the best evidence, and shows no dealings with Parchen & Paynter, by Northwestern Transportation Company, with whom defendants contracted, and because it calls for secondary evidence, copies of the accounts, instead of original books or entries." The objection was sustained, and plaintiff excepted. The witness was then asked the following questions: "State whether or not you now have in your possession the books of original entries kept on Steamer Nellie Peck, in 1871? State whether or not said entries were made at or about the time they purport to have been made in said book as set forth in said account?" These questions were objected to on the same grounds, and the objections were sustained. In themselves these questions do not appear to us to be objectionable. If they had been propounded for the purpose of identifying and proving the proper manner of keeping the books, with the view of introducing the books themselves in evidence, we think they would have been proper. But it was not claimed upon the trial that the books themselves were present, or that there was any purpose of introducing them. Upon the contrary, it appears from other portions of the deposition that the purpose was simply to introduce a copy of so much of the books as contained the account between Durfee & Peck and Parchen & Paynter. The witness was asked the following question: "If you state that you have in your possession the book of original entries kept on Nellie Peck in 1871, please state whether the same contains an account between Durfee & Peck and Parchen & Paynter, in 1871. If so, set out a copy of same as it appears on said book of original entries, and attach said copy to your answer to this interrogatory as an exhibit?" That books of accounts must themselves be produced upon the trial, and that it is not competent to prove their contents by attaching copies to depositions see *Churchill v. Fulliam*, 8 Iowa, 45. Inasmuch as the books do not appear to have been attached to the deposition or in any manner identified, and no purpose to introduce them in evidence was shown, it could have worked no preju-

dice to the plaintiff that he was not permitted to prove what books were used, and by whom and how they were kept.

. V. One J. M. Arnoux was introduced as a witness for the defendants. He was the receiving and forwarding clerk for McClay & Co., and as such received about three-fourths of the cargo of Nellie Peck on her first trip to Benton, including the goods in controversy, consigned to Parchen & Paynter. This witness weighed the goods as they were received, and paid Rodifer, the clerk of the boat, on behalf of Parchen &. Paynter, on account of the freight, $3,747.50, the money having been previously placed at his disposal by Parchen & Paynter for that purpose. Upon cross examination this wit-. ness was asked the following questions: "Have you not given a written statement of the transaction and of the amount paid by you, and the amount of freight and charges due on said goods? If you did not know at the time of the delivery of said goods that the back charges and freight had not all been paid, did you not soon ascertain the fact that said charges had not been fully paid? These questions and the answers were objected to for the reason that the same are not proper cross-examination, and are immaterial, irrelevant and incompetent. The sustaining of this objection is assigned as error. It is urged that the first question is admissible on two grounds, first, as a declaration of the agent of Parchen & Paynter; second, as laying the foundation for the impeachment of the witness if he should deny having made such statement. First, it cannot be claimed that Arnoux was the agent of Parchen & Paynter for any other purpose than receiving the goods and paying the freight. When these acts were done his agency terminated. The declaration of an agent to bind his principal must be made during the continuance of the agency and in regard to a transaction then depending *et dum fervet opus*. 1 Greenleaf on Evidence, section 113. This point has been frequently ruled by this court, but it is so elementary that it is unnecessary to refer to further authority in support of it. The question excluded is general; it is not confined to a time during the continuance of Arnoux's agency. In so far as it sought to introduce a declaration of Arnoux, as agent, and thus affect-

ing the defendants, it was properly excluded. Second, the question is not competent for the purpose of laying a foundation for the impeachment of Arnoux. Where it is sought to impeach a witness by the production of a paper written by him, the paper must be shown to the witness and he must be asked if he wrote it. 1 Greenleaf, section 463.

*4 ——: impeaching witness.*

The second of the above questions it is claimed is admissible both as substantive evidence and for the purpose of laying the foundation for the impeachment of the witness. This question refers to knowledge acquired by Arnoux after the goods had been delivered, and his agency had ceased. Any information obtained at such time would be mere hearsay, unless derived from an admission of the defendants or one of them. The question is not confined to such admission, and hence in its general terms was properly excluded. A witness cannot be cross-examined as to any fact which is collateral and irrelevant to the issue, merely for the purpose of contradicting him by other evidence, if he should deny it. 1 Greenleaf on Evidence, section 449. C. K. Peck was introduced as a witness, and asked the following question: "I will inquire whether or not you have had any conversation with one James Arnoux in regard to this matter in controversy?" This question was properly excluded, for the reasons already assigned.

VI. It is claimed that the court erred in admitting in evidence the Montana judgment upon which the counter-claim is based. It is objected that the proceedings do not show that they were between the parties to this suit, nor that the judgment was rendered against the plaintiff in this action. The parties in that action are Henry M. Parchen and Woodman S. Paynter, plaintiffs, and Campbell K. Peck, sole survivor of the Northwestern Transportation Company, defendant. The petition alleges that the plaintiffs are copartners under the firm name and style of Parchen & Paynter; that the said defendant, C. K. Peck, with Edgar II. Durfee, since, deceased, during the year 1871, were copartners engaged in the transportation of goods and procuring insurance thereon from New York, Philadelphia, St. Louis, and elsewhere, by way of Sioux City

and other places to Fort Benton, Montana, under the firm name and style of the Northwestern Transportation Company, and that the said company at different times during said year, 1871, transacted the said business under the name of Durfee & Peck, and that on or about the 15th day of October, 1874, the said Edgar H. Durfee departed this life, leaving the said C. K. Peck sole survivor of the said copartnership, and the said plaintiffs complain of the said C. K. Peck, surviving partner as aforesaid, and aver, etc.

The defendant, C. K. Peck, answered this petition, alleging that the Northwestern Transportation Company was an incorporation organized under the laws of Iowa, and denying that any part of its business was transacted under the name of Durfee & Peck, and denying also that Durfee & Peck at any time were copartners engaged in the transportation of goods or in procuring insurance thereon between the points named in the petition.

The reply denies that the Northwestern Transportation Company was an incorporation. The judgment is as follows: " It is ordered and adjudged that the said plaintiffs do have and recover of the said defendant," etc. It is plain from the petition that the claim was made against C. K. Peck, in his capacity of sole surviving partner of Durfee & Peck. The question whether he was such surviving partner was distinctly made in the case, and by the judgment was determined against him. The whole record in the case shows that judgment to have been against C. K. Peck, in his capacity of surviving partner of the firm of Durfee & Peck, the same capacity as that in which he sues in this case. The identity of the defendant in that case with the plaintiff in this appears from the record. The plaintiffs in that case and the defendants in this are the same. The record of the judgment was properly admitted in evidence.

VII. It is claimed, however, that the court erred in permitting W. S. Paynter to enter his appearance and join with H. M. Parchen as co-defendant in the answer, defense and counter-claim. The action is against Henry M. Parchen, as member of the firm of Parchen & Paynter.

5. PARTIES:
partnership

Certainly it was not erroneous to allow the other partner, who was interested in, and who would be affected by, the litigation, to enter a voluntary appearance and join in the defense.

VIII.   The following question asked Peck was excluded: "In what relation, if any, did the Northwestern Transportion Company stand to Durfee & Peck, so far as procuring freight for transportation in 1871?"   We cannot see how the relation of the Northwestern Transportation Company could be material, except as affecting the admissibility of the Montana judg ment.   But as the record in that case shows that judgment to be against Peck, as surviving Partner of Durfee & Peck, evidence as to the relation of the transportation company could not have changed the result.

IX.   It is urged, lastly, that the evidence does not support the court's finding of facts.   We unite in the conclusion that this position is not tenable.

AFFIRMED.