CLEMENTS et al. v. McGINN et al.

No. 15,099; August 30, 1893.

33 Pac. 920.

**Will—Contest After Probate—Setting Aside in Toto.**—Under Code of Civil Procedure, sections 1330, 1331, providing that, where a will is admitted to probate without contest, any person interested may within one year initiate a contest, and if it shall appear that the will is invalid, etc., the probate must be annulled and revoked,

and the powers of the executor must cease, where a contest is initiated in time, and the will found invalid, it must be set aside in toto, and not left standing as to persons not joining in the contest.[1]

**Will—Contest After Probate—Mental Capacity.**—On the contest of a will on the ground of mental incapacity, the will having been previously admitted to probate, contestants only have the burden of proving the issues raised, and an instruction that the probate of the will raises a presumption of mental capacity, which contestants must also overcome, is properly refused, as imposing an additional burden.[2]

**Will—Contest on Ground of Mental Incapacity.**—On the contest of a will on the ground of mental incapacity, declarations of testator are admissible to explain his peculiar actions only when made at about the time of such actions, and therefore a letter by him is not admissible to explain certain conduct, where it is without date, and there is nothing to show when it was written.[3]

**Insanity.—The Discharge of a Person from an Insane Asylum** by the resident physician and secretary, though the certificate does not state that she is restored to reason, is prima facie evidence that she is so restored, or that she was improperly committed, and is therefore a competent witness, these being the only grounds for her discharge under the statute.

**Witness—Person Committed to Insane Asylum.**—Under Code of Civil Procedure, section 1880, declaring that persons "who are of unsound mind at the time of their production for examination" cannot be witnesses, the fact that a person has been committed to an asylum as insane does not render her an incompetent witness, but the question of competency is for the court, and her testimony is properly received, in the absence of anything to show her of unsound mind.

**Witness—Impeachment—Particular Wrongful Acts.**—A witness cannot on cross-examination, for the purpose of impeaching him, be asked as to his having been in jail, etc., as, under Code of Civil Pro-

---

[1] Cited in Estate of Renton, 3 Cof. Pro. Dec. 121, as holding the order, judgment and decree admitting a will to probate not to be final in any sense, and not admissible even as evidence on a trial of a contest of such instrument.

[2] Cited in Estate of Kendrick, 130 Cal. 370, 62 Pac. 610, in defining an insane delusion.

Cited and followed in State v. Simes, 12 Idaho, 314, 85 Pac. 915, the court saying: "We think, as was said in Clements v. McGinn, 33 Pac. 923, that, 'An insane person is competent to be a witness if he understands the nature of an oath and has sufficient mental power to give a correct account of what he has seen or heard.'"

[3] Cited in the note in 4 Cof. Pro. Dec. 521, on declarations of a testator to sustain, defeat, or aid in construction of will.

cedure, section 2051, he cannot be questioned as to particular wrongful acts.

Will Contest—Finding of "Sound Mind."—On the contest of a will, a special finding that testator was not of "sound mind" is a finding of an ultimate fact, and not a mere conclusion of law.

APPEAL from Superior Court, City and County of San Francisco; J. V. Coffey, Judge.

Proceeding by Mary A. Clements and another against Eugene McGinn and others to contest the will of James McGinn, deceased, which had been admitted to probate. There was a judgment for contestants and proponents appeal. Affirmed.

P. Reddy, W. H. Metson, Smith & Muraskey and Reddy, Campbell & Metson for appellants; James L. Crittenden and H. S. Foote for respondents.

PER CURIAM.—This is a contest over the last will of James McGinn, who departed this life on or about February 6, 1888, at the city and county of San Francisco, leaving a last will, bearing date September 26, 1887, by which he left to his executors, in trust for his wife, Johanna McGinn, during her life, all of his property, real and personal, of the value of $60,000 or more, and, upon the death of his said wife, the same was bequeathed and devised to his children by said wife, to the exclusion of certain other of his children by a former wife. The will was admitted to probate, and Eugene McGinn and Joseph Byrne, therein named as executors, were duly appointed as such executors. In due time, Mary A. Clements and Emma Burns, two of testator's daughters by a former marriage, initiated a contest to annul and revoke the probate of said will, and to obtain a decree adjudging the invalidity thereof upon various grounds, among which were: (1) that the will was made under duress; (2) undue influence and duress; (3) fraud on the part of Johanna McGinn and others, whereby the execution of said will was procured; (4) that James McGinn was of unsound mind and insane, and not of sound and disposing mind and memory, when said last will was made, signed, published and executed. Answers were filed by the executors, by Johanna McGinn, the widow, and Ellen Frances McGinn, her daughter, which answers were,

by stipulation of the attorneys, treated as the answers of all the minor children of James and Johanna McGinn. Under the pleadings, seventeen issues were framed and submitted to a jury impaneled to try the cause, all of which were answered by said jury in favor of the respondents below and appellants here, except one, which was answered in favor of contestants. It was as follows: "Eleventh issue. Was the said James McGinn of sound mind at the time said instrument was subscribed by him, and when the said James F. Tevlin and said James F. Smith signed their names to the same?" To which the jury answered "No." The issues as submitted, with the answers thereto, are too lengthy to be set out in full here. It may be said of them in brief that the findings of the jury thereon were complete and specific, and were to the effect that no fraud, duress, menace or undue influence was practiced upon the testator by Johanna McGinn or any other person in the matter of the will; that it was duly made, executed, witnessed, published and declared to be the last will and testament of said James McGinn, and was never by him annulled or revoked, and was only invalid by reason of said testator not being of sound mind at the date of its execution, viz., September 26, 1887. Upon the verdict of the jury, the court entered a decree adjudging that the said James McGinn was not of sound and disposing mind on the twenty-sixth day of September, 1887, at the time when said alleged will was signed and published, and that said alleged will is not the last will and testament of James McGinn, deceased, and revoking the probate of the same. This appeal is prosecuted from the judgment, and from an order denying a new trial. The trial of the cause was on for sixty-seven days, extending from November 15, 1888, to April 20, 1889. The transcript consists of three hundred and forty-two printed pages, of which over one hundred and fifty pages are devoted to the evidence and objections thereto. The instructions of the court to the jury cover some sixty pages. Many exceptions were reserved at the trial. A careful review of the whole case leads to the conclusion that a few only of them need be mentioned.

The testimony tended to show that the testator, James McGinn, was a long time a resident of the city and county of San Francisco, where he was engaged in the business of an

undertaker. He was twice married. By his first wife he had six children, who survived him, four of whom were boys and two girls. By his second wife, Johanna McGinn, who still survives, he had five children, who survived him. Testator seems to have been naturally of an excitable temperament and irascible disposition. For some time prior to August 3, 1887, he was in failing health, and complained of severe pains in his head, and on the last-named date had a sudden and serious attack of paralysis, from the effects of which he was helpless and speechless for a considerable time, and from which he never entirely recovered. The will in question was executed September 26, 1887, and the testator died on or about February 6, 1888, as before stated. The question as to whether or not testator was of sound and disposing mind at the date of the execution of the said will involved the prominent proposition in the litigation. Many witnesses were called to the point by the contestants, the most of whom, as intimate acquaintances of testator, concurred in the opinion that he was mentally insane.

The first contention of the appellants is that the eleventh finding of the jury is not a question of fact, but a conclusion of law. The term "sound mind," as applied to the condition or status of testator, was a fact. It was for the purposes of the case an ultimate fact, in the establishment of which the physical condition of the party, his acts and conduct, were the probative facts. According to the finding of the jury, testator was not of sound mind at the date of the execution of the will; in other words, he was of unsound mind. "A person of unsound mind is an adult who, from infirmity of mind, is incapable of managing himself or his affairs. The term, therefore, includes insane persons, idiots, and imbeciles": Black's Law Dictionary; Jenkins v. Jenkins' Heirs, 2 Dana, 103. It is the possession of a sound mind which is one of the requisites to capacity to make a will: Civ. Code, sec. 1270. The term "disposing capacity or mind" is an alternative or synonymous phrase in the law of wills for "sound mind" and "testamentary capacity": Black's Law Dictionary. The expression "unsound mind" equally stands for and includes the want of a disposing mind or testamentary capacity.

It is also contended that the decree or judgment should not have been to set aside or vacate the probate of the will, as to those who did not contest, and Samson v. Samson, 64 Cal. 327, 30 Pac. 979, is cited in support of the position. Counsel also suggests a conflict between this case and that of Estate of Freud, 73 Cal. 555, 15 Pac. 135. We think a reference to the code will show, first, that the contention of appellants is not tenable; second, that there is no conflict between the cases above mentioned. Section 1330 of the Code of Civil Procedure provides that where, as in the present case, a will is admitted to probate without contest, any person interested may within one year initiate a contest, and if, upon a hearing, it shall appear that the will is invalid or not sufficiently proven to be the last will of the testator, the probate must be annulled and revoked; and the next section provides that thereupon the powers of the executor, etc., must cease. The case of Freud was, like the present one, within these provisions, and hence there was properly a revocation of the probate in toto. The case of Samson v. Samson, supra, came within the purview of section 1333, which provides that, if no person contests the validity of the will within one year after its probate, such probate shall be conclusive except against infants, etc., who within one year after their disability is removed may contest. Ten years had elapsed in that case between the probate of the will and the contest by an infant, whose disability had been removed within one year next before filing the contest, and it was held that the other heirs were concluded by the lapse of time, and hence that, as to them, the probate should not be set aside.

At the trial, one W. J. Mallady was called as a witness on behalf of contestants, and testified as follows: "I knew James McGinn twenty years. Was in his employ about eight years, James McGinn was always very friendly with me. I enjoyed his confidence and friendship up to the time of his last sickness. On one occasion, when he met me on Montgomery street during his last sickness, he was not cordial or friendly with me as he used to be. He treated me coldly. My opinion is that James McGinn was of unsound mind during his last illness. One of my reasons for this opinion is that he treated me coldly and unfriendly on this occasion when he met me on Montgomery street." Upon cross-examination, counsel for

defendants, after proving by witness that he knew the handwriting of testator, showed him a paper, and asked him if it was in the handwriting of James McGinn. The paper was objected to as evidence, on the ground that it was incompetent, irrelevant and immaterial, and that its identification is irrelevant and immaterial. The objection was sustained and the ruling excepted to. The paper is set out in the record, and is without date. It purports to be a letter signed by James McGinn, addressed to the captain of Boston police, asking for information of one James Mallady, formerly of Boston, and now known as William J. Mallady, and residing in San Francisco; expresses doubts as to his honesty; and seeks information as to his previous career, etc. The object, as we may well suppose, was to show a lack of confidence in and friendship for the witness on the part of McGinn, and thus to account for the treatment of the former by the latter when they met on Montgomery street, as stated in the direct examination. Wherever the bodily or mental feelings of an individual are material as proof upon an issue, the usual expression of such feelings made at the time in question is said to be not hearsay, but original evidence, and, as such, admissible: 1 Greenleaf on Evidence, sec. 102. The difficulty which meets us in the solution of the question here is that there is no date to the document offered in evidence, and no means by which to determine the time when the expressions in it were used. The witness had known McGinn twenty-one years, and had been in his employ about eight years, but during which eight years of the twenty-one does not appear. For aught that is shown, the letter may have been written at almost any time within this extended period. The authorities are quite uniform to the effect that expressions indicative of mental or bodily feeling must be confined to the period of the happening of the event which they illustrate. If, in the present instance, the instrument was intended to show a revulsion of feeling toward the witness on the part of a sane man for valid cause, we are of opinion it should have appeared that it emanated prior to the alleged attack upon which his unsoundness of mind was predicated, or at least prior to the alleged meeting on Montgomery street. If made subsequently, it may have been promoted by the vagary of a disordered mind, and could not be received as rational

support and reason for the changed conduct of McGinn toward the witness. We cannot therefore say there was error in the exclusion of the instrument.

There was no error in the ruling of the court excluding the evidence as to the reasons which induced the witness James McGinn to visit his father. The particular visit is not specified. He had testified as to the condition in which he found his father, and it might well be that he visited him upon the most weighty matter of business, supposing him sane, only to find him in the condition he described. A witness cannot, on cross-examination, for the purpose of impeaching him, be questioned as to particular wrongful acts: Code Civ. Proc., sec. 2051; Jones v. Duchow, 87 Cal. 109, 23 Pac. 371, and 25 Pac. 256; Sharon v. Sharon, 79 Cal. 633, 22 Pac. 26, 131; Evans v. De Lay, 81 Cal. 103, 22 Pac. 408. It follows that the questions propounded to the witness Thomas McGinn as to his having been in the county jail, etc., were improper: People v. Carolan, 71 Cal. 195, 12 Pac. 52.

Mrs. Johanna McGinn was called as a witness on the part of contestants, and her testimony was objected to, upon the ground that she was incompetent to testify by reason of having been found to be of unsound mind, and an exception was taken to the ruling of the court permitting her to testify. The evidence already before the court showed that Johanna McGinn, on the thirteenth day of December, 1882, was by order of the superior court, or a judge thereof, committed to the asylum for the insane at Napa as an insane person, upon a certificate showing her to be afflicted with a form of insanity known as "recurrent mania"; also a certificate dated November 4, 1883, signed by the resident physician and secretary, discharging Johanna McGinn from the Napa State Asylum for the Insane, but which did not state affirmatively that she was "cured and restored to reason." The provisions of the Code of Civil Procedure, sections 1763–1766, both inclusive, relate to the appointment and discharge of guardians, and the care and custody of the property of insane and incompetent persons, and, for the purposes specified therein, are of controlling force and effect; and the adjudication of incompetency there provided for is conclusive against all persons dealing with the ward until he is restored to competency to manage his affairs, as provided by section 1766 of the

same code, except as limited by section 40 of the Civil Code. Kellogg v. Cochran, 87 Cal. 192, 12 L. R. A. 104, 25 Pac. 677, discusses the provisions of the code and the cases to which their several provisions are applicable, and we need not repeat the reasoning there indulged in here. The conclusion reached in that case is that a discharge from the asylum, either because improperly committed or upon the ground that the insane inmate has recovered, as provided in section 2197 of the Political Code, restores the person to capacity to sue, save where a guardian has been appointed under the Code of Civil Procedure. The question of the capacity of a witness to testify, however, does not turn upon the point whether or not he has been declared insane, or, when so declared, upon the question of judicial restoration. Section 1880 of the Code of Civil Procedure provides as follows: "The following persons cannot be witnesses: (1) Those who are of unsound mind at the time of their production for examination." This is substantially the rule as it has existed for generations, and was the rule of the common law. The unsound mind mentioned is unsound in fact, in contradistinction to those who have been judicially declared of unsound mind. An insane person is competent to be a witness if he understands the nature of an oath, and has sufficient mental power to give a correct account of what he has seen or heard: District of Columbia v. Arms, 107 U. S. 519, 27 L. Ed. 618, 2 Sup. Ct. Rep. 840; People v. New York Hospital, 3 Abb. N. C. (N. Y.) 243; Buswell on Insanity, sec. 344, and cases cited. The question whether a person who is offered as a witness is insane at the time goes to the competency of the witness, and is a preliminary question to be decided by the court: Cannady v. Lynch, 27 Minn. 435, 8 N. W. 164; Holcomb v. Holcomb, 28 Conn. 177; Grant v. Thompson, 4 Conn. 203, 10 Am. Dec. 119; Coleman v. Commonwealth, 25 Gratt. (Va.) 865, 18 Am. Rep. 711. Section 2197 of the Political Code provides that "insane persons received in the asylum must, upon recovery, be discharged therefrom." The only other ground for a discharge is that provided by the act of March 9, 1885, by which it is made the duty of the resident physician to discharge persons who have been improperly committed: Stats. 1885, p. 35. As was held in Kellogg v. Cochran, supra, a discharge for either of these causes (where no guardian

has been appointed) restores the person to civil capacity. In Hand v. Burrows, 23 Hun (N. Y.), 330, it was held that a commission might be issued to take the testimony of one committed to a lunatic asylum in another state, on the ground of insanity, and that the presiding judge would, before admitting it in evidence, determine by the answers given and such witnesses as might be produced as to the mental condition of the witness, and consequent admissibility of the evidence. We are of opinion, then, first, that the discharge of the witness from the asylum was prima facie evidence that she was restored to reason, and was of sound mind, or that she was improperly committed to such asylum; second, that in any event the question of her incompetency to testify was one for the court below to determine, and, nothing appearing either from a preliminary examination or from the tenor of her testimony to indicate unsoundness of mind at the date of her examination, no error was committed.

There are numerous other exceptions in the record based upon the rulings of the court upon questions asked by appellants on cross-examination of witnesses, some of which rulings were correct, some clearly upon matters within the discretion of the court, and others which, although of doubtful propriety, are not of sufficient importance to warrant a reversal. We do not feel called upon to notice them in detail. The instructions were voluminous, and presented to the jury the questions of law applicable to the case with great clearness. A number of those asked by respondents and refused were evidently so refused because others precisely similar or of substantially similar import had been given. Others refused or modified related to issues decided in favor of respondents, and hence need not be considered. The court eliminated from the eighth instruction asked by appellants so much thereof as instructed the jury that the previous probate of the will raised a presumption that McGinn was, at the time of its execution, of sound and disposing mind, and competent to make a will, "and, unless the contestants have overcome not only this presumption, but all of the other evidence in the case offered in support of said presumption and the sanity of the said testator, by a preponderance of evidence and to your satisfaction, you will find in accordance with said presumption," etc. The action of the court was proper. It had already

instructed the jury very properly that "the burden is upon the contestants in this proceeding to prove and establish the issues made herein by a preponderance of evidence, and, unless so established, you will find each and every issue against said contestants." The contestants had the affirmative upon all the issues made, and therefore the burden of proof was upon them: Estate of Dalrymple, 67 Cal. 444, 7 Pac. 906; In re Burrell, 77 Cal. 479, 19 Pac. 880. That portion of the instruction stricken out, however, assumed, in addition to and beyond all this, the probate of the will cast an additional burden of proof upon the contestants, which was not true. Had they appeared at the probate of the will, and made the same issues, they would have had the same burden cast upon them—no greater, no less. The other objections to instructions are less important, and require no special mention. Those given on behalf of contestants were proper. Upon the whole, the instructions were quite as favorable to respondents (appellants here) as the law permits, and the judgment and order appealed from are affirmed.