## L. BULLIS v. J. H. EASTON, Appellant.

**Attorney and Client: RESCISSION.** An attorney sought to recover fees from a husband who had retained him in divorce litigation. Defendant plead that the attorney was asked by defendant's wife to take her side of the case and wrote her letters telling her that he was already retained simply to "shelve" him and advising her how to proceed. *Held*, the letters are material and relevant where it is also plead that defendant had knowledge that such letters had passed and, for that reason, did not ask plaintiff to take an active part in the trial. Such letters bear on whether the attorney had rescinded his contract of employment and on whether he was acting in good faith.

**Secondary Evidence.** Where a person without the state refuses letters written to her to be attached to her deposition, secondary evidence of the contents of such letters is admissible.

SAME. A copy of letters attached to the deposition by the commissioner and certified by him to be true copies of the originals, which were identified by a witness on the trial, is sufficient secondary evidence of the contents of such letters, where the originals are not available.

*Appeal from Winneshiek District Court.*—HON. W. A. HOYT, Judge.

### SATURDAY, DECEMBER 14, 1895.

Action at law to recover attorney's fees. The defendant in answer denied the claim, and further pleaded that he retained plaintiff in certain litigation which he contemplated having with his wife; that, at about the time of the commencement of this litigation, plaintiff, in violation of his duties as an attorney, made

various statements derogatory of defendant's case, and encouraged and induced his (defendant's) wife to make a defense to the action which defendant had brought against her; that these matters came to the knowledge of defendant, and, believing that plaintiff was acting in bad faith and had repudiated his contract, he did not call plaintiff into the trial of the action. By way of counterclaim, the defendant averred that he had paid the plaintiff two hundred and fifty dollars as a retainer fee, but that by reason of his conduct aforesaid there has been an entire failure of consideration; that he was compelled to and did pay out large sums of money in his litigation with his wife by reason of the conduct of the plaintiff; and that he had been damaged by reason of these matters in the sum of four hundred dollars. The case was tried to a jury, which returned a verdict for plaintiff in the sum of two hundred and two dollars, on which judgment was rendered, and defendant appeals.— *Reversed.*

*Willett & Willett* and *Dan Shea* for appellant.

*L. Bullis pro se.*

Deemer, J.—The deposition of defendant's wife, from whom he had been divorced in the litigation out of which this suit arose, was taken in the city of New York, at which place she at the time resided. In this deposition she testified to having received a paper containing a published notice of the divorce suit brought by her husband against her; that she clipped this notice from the paper, and sent it to the plaintiff, with the request that he act as her attorney; that in

response thereto she received two letters from the plaintiff, which she then had in her possession. She was then asked to produce the letters, and have them attached to her deposition. This she refused to do. She was then asked to produce them, that they might be copied by the commissioner. This she did, and duly-certified copies were made, attached to and made a part of the deposition, by the commissioner. Shortly after the deposition was returned and filed in the district court of Winneshiek county, the plaintiff filed written objections to the copies of the two letters attached to the deposition on the ground "that the same are incompetent and irrelevant, for that the same are not the best evidence, and the original letters are shown to exist." This objection was sustained by the court, and defendant assigns error on the ruling. It is further shown by the record that these same letters were attached to a deposition taken in the main action that defendant brought against his wife, and were used in the trial of that case. And it also appears that by agreement of the parties these depositions, with the letters, were removed from the files by defendant's wife, and taken to New York, where she then resided. As we have already seen, Mrs. Easton, in whose possession these letters were, refused to produce them for use upon this trial. It also appears that the evidence in the main case of *Easton v. Easton* was abstracted by one G. R. Willett for an appeal to this court, and copies were made of these letters written by plaintiff to Mrs. Easton. The defendant produced G. R. Willett as a witness on this trial, and after showing these facts, and proving that he had made exact copies of the letters, offered these copies in evidence; and they were "objected to by plaintiff as not being the best evidence, and incompetent, the originals being shown to exist." The objection was sustained, and exception

taken. These rulings present the first question made in argument by appellant's attorneys.

It is clearly shown that the letters belonged to Mrs. Easton, were in her possession and under her control in New York City, and that she refused to produce them to be attached to her deposition. She did, however, present them, for copies thereof to be made, which were attached to her deposition by the commissioner. It thus appears that defendant did all he could to secure the originals, and we think that, under well-settled rules of law, secondary evidence of the contents of these letters was admissible. The rule, as stated by Mr. Best in his work on Evidence (volume 2, section 482), is as follows: "It has already been stated that, when the absence of the primary source of evidence has been accounted for, secondary evidence is receivable. The excuses which the law allows for dispensing with primary evidence are that the document has been lost or destroyed, or that it is in the possession of the adversary, who does not produce it after due notice calling him to do so, or in that of a party privileged to withhold it, who insists on his privilege, or who is out of the jurisdiction of the court, and consequently cannot be compelled to produce it." The same rule is recognized by Prof. Greenleaf in his work on Evidence (volume 1, 15th Ed., sections 84, 572), and is sustained by the following, among other, authorities: *Electric Co. v. Palmer* (Minn.) 53 (N. W. Rep. 1137); *Manning v. Maroney* (Ala.) (6 South Rep. 346); *Knickerbocker v. Wilcox* (Mich.) (47 N. W. Rep. 124); *Miles v. Stevens* (Mass.) (8 N. E. Rep. 428; *Roberts v. Dixon* (Kan.) (31 Pac. Rep. 1083); *U. S. v. Reyburn*, 6 Pet. 352; *Burton v. Driggs*, 20 Wall. 134; *Fisher v. Greene*, 95 Ill. 98, 99; Bradner, Ev., p. 127, section 16. The identity of the letters was sufficiently established—*First*, by the statement of Mrs. Easton that she received them in answer

to letters written by her to the plaintiff with reference to the business to which they relate; *Lyon v. Assurance Co.*, 46 Iowa, 631, and *Davis v. Robinson*, 67 Iowa, 363 (25 N. W. Rep. 280); *second*, by the testimony of G. R. Willett as to the genuineness of the signature attached to the originals; and, *third*, by the *quasi* admissions of the plaintiff. The certificate of the notary was sufficient to identify them, and his statement that they were true copies is receivable as proof of the fact. It was a part of his duty as commissioner to see that correct copies of these letters were attached to the deposition when the witness refused to part with the originals. As it was a part of his duty to attach these copies and make certificate to that fact, we think that when he has done this the copy returned by him should be received as correct. *Mauri v. Heffernan*, 13 Johns. 72. But, if we are in error in this, the copies identified and compared by the witness Willett should have been admitted.

Appellee cites the cases of *Peck v. Parchen*, 52 Iowa, 46 (2 N. W. Rep. 597), and *Churchill v. Fulliam*, 8 Iowa, 45, as conclusive of the matter. A careful examination of these cases will disclose that neither of them decides the question here presented. In each of these cases an attempt was made to prove an account by producing copies of that part of a book of original entries, showing the same, identified by witnesses to the effect that such accounts were found in books of original entries. The books themselves were not produced, nor were correct copies of the entire contents thereof offered in evidence, nor did the witnesses refuse to produce the original. The court says in the 8th Iowa case, speaking through Woodward, J.: "This proceeding was erroneous, and was not in accordance with the meaning and intent of the law relating to the admission of books of entry. The

admission of these books as evidence is of such a character that it may be said to have hardly won its way to a place among the rules of law. Wherever admitted, it is based upon the idea of the presence of the books themselves upon the trial, and we have never known an attempt to dispense with that presence and substitute evidence of their contents. After certain preliminary testimony concerning them, the court is to determine on their admissibility, but in the mode of proceeding adopted in this case the party offering them assumes this adjudication. Then, the books being admissible, they are still subject to any objections which may be made by the other side respecting their credibility, arising from the manner in which they are kept,—their appearance, alterations, erasures, confusion, and irregularity—and whatever might tend to diminish their credibility in the eyes of the jury. This is in the nature of a cross-examination of a witness, and this is taken away. The other party has no opportunity to object. Again, the book itself becomes the witness, when admitted, and its testimony cannot come by hearsay through other witnesses, nor can depositions be taken." In view of this statement, further comment seems to be unnecessary. The cases are so easily distinguishable that argument can add nothing.

The letters were also objected to as irrelevant, but we think this cannot be so. They were pleaded in the answer, attached thereto, and made a part thereof. And it is further stated that the wife of this defendant was advised and encouraged thereby to make defense to defendant's suit, and that on account thereof the defendant was compelled to expend a large sum of money to meet the defense so interposed. The letters themselves advised Mrs. Easton that he (plaintiff) was retained by defendant simply to "shelve" him; that she had better come to

Decorah and employ an attorney; stated that she would have no trouble in doing so; and expressed the conviction that she could beat her husband in the action, because she had ample cause to leave him. They also directed her as to how to proceed, and as to her right to a continuance and to a divorce and alimony. Surely, under the issues, these letters were relevant.

It is further claimed that the letters were immaterial, and that, if the court was in error in excluding them, it was error without prejudice. The answer of defendant, among other things, pleads that defendant had notice or knowledge of the statements contained in these letters, and that for that reason he did not ask plaintiff to take an active part in the trial, believing that plaintiff had repudiated his contract. The evidence shows that these letters came to the knowledge of defendant in April, 1888, after he had retained the plaintiff, but before the trial of the divorce suit. And we think they were material evidence in favor of the defendant. The duty which an attorney owes to his client is so well understood that we need not take the time or space to state it. It is enough to say that the jury might have found sufficient justification in these letters for defendant's claim that the contract of employment had been rescinded by the plaintiff, and that plaintiff was acting in bad faith with him.

II. The court did not err in refusing to submit defendant's counterclaim, for there was a lack of sufficient evidence to support it.

III. It is also claimed that, under the uncontradicted evidence, there should have been a verdict for defendant. In view of a re-trial, we avoid expressing any opinion upon this assignment of error. For the error pointed out the judgment of the district court is *reversed*.