MARGARET ANNA FOY, Appellee, v. METROPOLITAN LIFE INSURANCE COMPANY, of New York, Appellant.

No. 43091.

OCTOBER 15, 1935.

Smith & Work, for appellant.

Jaques, Tisdale & Jaques, Jo N. Wagner, and E. J. Grier, for appellee.

ANDERSON, J.—Anna Marie Foy made an application to the Metropolitan Life Insurance Company, defendant-appellant, on January 31, 1928, for a policy of life insurance and, after a physical examination by a company physician, the policy in suit was issued to her under date of March 1, 1928. Attached to said policy and made a part thereof was a supplementary contract providing for total and permanent disability payments, under certain conditions. The provisions of the supplementary contract pertinent to a disposition of the issues here involved were as follows:

"Metropolitan Life Insurance Company * * * hereby agrees, that upon receipt by the Company * * * of due proof * * * that the insured has * * * become totally and permanently disabled, as the result of bodily injury or disease occurring and originating after the issuance of said policy * * * it will, after the continuance of such disability, (1) Waive the payment of each

premium falling due under said policy and this supplementary contract. (2) Pay to the insured, or a person designated by him for the purpose, or, if such disability is due to, or is accompanied by, mental incapacity, to the beneficiary of record under said policy, a monthly income of $10.00 for each $1,000.00 of insurance * * *."

The beneficiary named in the policy was the plaintiff, appellee herein, who was a niece of the insured. It is conceded that the insured, Anna Marie Foy, became totally and permanently disabled on the 27th day of July, 1928, and on that date she was committed to the hospital for insane at Mt. Pleasant, Iowa, by the commissioners of insanity of Wapello county, Iowa; and it is further conceded that at that time all premiums had been paid and the policy in suit was in full force and effect. The appellee claims in her petition that she is entitled to the sum of $10 per month from the date of the disability of the insured and also for the return of the premiums paid to the company from the date of the total disability. The appellant denies any indebtedness under the policy or supplementary contract whatsoever and denies that the insured became totally and permanently disabled as the result of bodily injury or disease occurring and originating after the issuance of the policy, and as supporting this contention pleads that the insured was adjudged insane and committed to the state hospital at Kankakee, Illinois, on December 24, 1924, and was discharged therefrom on August 19, 1927, and that the type of her insanity was diagnosed as dementia praecox; that she was again found to be insane by the commissioners of insanity of Wapello County, Iowa, on the 27th day of July, 1928, and committed to the hospital for the insane at Mt. Pleasant, Iowa; that the disease from which insured is now suffering originated prior to the issuance of the policy, and by reason thereof there is no liability under the supplementary contract; that the insured in her application attached to the policy stated that she had resided in Ottumwa, Iowa, for fourteen months, while she had only resided there four months; that she further stated that she had not been sick since childhood; had not been attended by a physician during the last five years; that she had had no treatment in any hospital during the last five years; and that she had lost no work on account of illness. The proof fairly sustains all of the facts

pleaded by appellant except that the disease from which the insured is now suffering originated prior to the issuance of said policy.

It appears that there were no formal notice and proofs of disability filed with the insurance company as required by the provisions of the policy and supplementary contract, but plaintiff, appellee, alleges a waiver of such provisions, and this allegation was not controverted in the answer of the defendant other than by its general denial, although there was proof introduced sufficient to establish the fact of the waiver. And no question is raised on this appeal on this issue.

At the close of the evidence defendant's motion for a directed verdict was overruled and the case was submitted to a jury, which returned a verdict in favor of the plaintiff. A motion for new trial was later overruled by the court, and defendant appeals.

■■■ The first error assigned by appellant is that the court erred in overruling defendant's motion for a directed verdict at the close of all the evidence. This motion was based upon the following grounds: That the undisputed evidence was that the disease from which the insured is now suffering originated prior to the issuance of the policy and at or prior to the time of her commitment to the hospital for insane in Illinois on the 23d day of December, 1924, and that such condition continued until the time she was committed to the Mt. Pleasant hospital in Iowa. These grounds were also urged in defendant's motion for a new trial. It is true that three doctors testified in answer to hypothetical questions assuming the facts that we have above recited, that if the insured was afflicted with a certain form of dementia praecox (hebephrenic), which was assumed in the hypothetical question, that she was insane at the time the policy was issued; but there was direct evidence from at least one of defendant's medical experts that certain forms of dementia praecox yielded to treatment and were curable. Another of defendant's experts was the physician who examined the insured, Dr. Sheafe, and he testified that he did not notice at the time of his examination of the insured anything that indicated insanity. The agent of the insurance company who solicited and sold the policy to the insured had several discussions with her in regard to the insurance, and there is no evidence that he noticed anything that would indicate insanity. The testimony further shows that dur-

ing the time the insured lived in Iowa, from August, 1927, until July, 1928, she was employed for several months at housework by various people and her work was satisfactory. The testimony of Dr. Sheafe and the agent of the company and the old lady with whom the insured made her home in Ottumwa are the only witnesses testifying who knew the insured and who talked to her after her discharge from the hospital in Illinois. The testimony would lend some support to the condition of sanity of the insured at the time the policy was issued. It has been held by this and many other courts that after an adjudication of insanity such condition is presumed to continue, but if a discharge of the patient from confinement follows later, the presumption changes and there is a new presumption that sanity has returned. Mileham v. Montagne, 148 Iowa 476, 125 N. W. 664, 667; Clements v. McGinn, 4 Cal. Unrep. 163, 33 P. 920, 922; Watson v. Banks, 154 Ark. 396, 243 S. W. 844, 845; In re Balch's Estate, 93 Misc. 419, 156 N. Y. S. 1006, 1008; Knorp v. Board of Police Commissioners, 31 Cal. App. 539, 161 P. 12, 13; In re Estate of Ost, 211 Iowa 1085, 1090, 235 N. W. 70.

In the Montagne case, supra, this court approved the following instruction: Par. 5:

"It appears that some time in the month of June, 1900, the said John George Montagne was adjudged insane by the commissioners of insanity of this county; that he was taken to the state hospital for insane at Clarinda, Iowa, for treatment; that he was subsequently discharged from said hospital. You are instructed that this is prima facie evidence, but not conclusive, that he had recovered from the condition which caused his incarceration in the hospital, for while it is true that all people are presumed to be sane, yet when it is shown at any time that a contrary condition exists, and that he is in fact insane, this condition is presumed to continue until the contrary appears and, where one is discharged by the proper authorities after being adjudged insane, the presumption is that he has resumed his natural and normal state of mind, and the burden would rest upon the party alleging insanity at a later period to establish by a preponderance of the evidence the existence of such insanity; but, however, it is proper for you to consider, with all the other evidence in the case, the fact that the party was at one time insane in determining whether or not insanity existed

at a later time and at the time of the execution of the instrument purporting to be his last will.'' And in commenting upon the law as stated in the approved instruction this court said: ''The fact of insanity at one time being established, such fact may be considered in determining the condition of the person's mind at a subsequent period, although such person may have been discharged from the place of detention as cured. * * * The weight of such prior finding of insanity is for the jury.''

In the Watson v. Banks case, supra, the Supreme Court of Arkansas said that the order of commitment ''created no presumption of insanity after the discharge from the state hospital.'' That court further said: ''There is, therefore, no presumption that he labored under insanity after the time of his discharge.''

In In re Balch's Estate, supra, the New York court said:

''It must be presumed, as Mrs. Balch was discharged from the asylum in New York and permitted to go at large, that after her discharge she was again *sui juris*. The presumption is in favor of a resumption of sanity under such circumstances.''

In the Knorp case, supra, the California court said:

''The certificate of discharge dated May 24, 1904, was at least prima facie proof of the plaintiff's restoration to capacity upon that date.''

In the Ost case, supra, this court recited the statutory duty of the board of control and superintendent of insane hospitals to discharge a person who has regained his sanity, and the court then said, on page 1090 of the opinion:

''There is a presumption that officers having a duty to perform have performed it. It is true that such presumption, as well as the presumption of insanity, by reason of the previous adjudication, is rebuttable.''

Nowhere in the present record does the appellant show that the insured was insane at the time she was discharged from the Illinois hospital, other than the testimony of the medical experts based upon the assumption that the insured was afflicted with dementia praecox, hebephrenic. And we have held that the weight of expert testimony based on hypothetical questions

is always for the jury. Bever v. Spangler, 93 Iowa 576, 61 N. W. 1072.

The appellant relies upon the rule announced in In re Knox's Will, 123 Iowa 24, 31, 98 N. W. 468, but that case is not in point and involved facts dissimilar to the facts established in the present case. In that case no mention is made of any commitment to an asylum or of any discharge therefrom. In the present record there is undisputed evidence of the commitment of the insured and also of her discharge from the institution. Under well-settled rules of law, the insanity of the insured presumptively ceased to exist after her discharge from the asylum, and the insurance policy here involved was issued several months after such discharge. We are constrained to hold that the record presented a fair controversy as to the insanity of the insured at the time the policy was issued, and that no error resulted in submitting such controversy for the determination of the jury.

■■■ Again the question of the construction of section 8770 of the 1931 Code is pertinent here. This section provides:

"Physician's certificate—conclusiveness. In any case where the medical examiner, or physician acting as such, of any life insurance company or association doing business in the state shall issue a certificate of health or declare the applicant a fit subject for insurance, or so report to the company or association or its agent under the rules and regulations of such company or association, it shall be thereby estopped from setting up in defense of the action on such policy or certificate that the assured was not in the condition of health required by the policy at the time of the issuance or delivery thereof, unless the same was procured by or through the fraud or deceit of the assured."

The quoted section estops the insurance company from setting up the defense here interposed unless the physician's certificate was procured by or through fraud or deceit. The appellant company does not allege any fraud or deceit. In fact, there is no allegation in the appellant's pleadings that the medical examiner was misled or deceived in any way. Under like situation we have held that the insurance company is estopped from interposing the defense that the insured was not in the condition of health required at the time of the issuance of the policy. See Welch v. Insurance Company, 108 Iowa 224, 78 N. W. 853, 50

L. R. A. 774; Peterson v. Des Moines Life Assn., 115 Iowa 668, 87 N. W. 397. Following the foregoing discussion and cited authorities, we are of the opinion that the trial court did not err in overruling appellant's motion for a directed verdict.

■■■ The next error assigned by appellant which we will notice is that the court erred in sustaining objections to the deposition of Dr. G. W. Morrow and instructing the jury to give no consideration to the testimony contained therein. At the time certain parts of the deposition in question were offered in evidence by the defendant, the plaintiff objected on the ground that it was incompetent, hearsay, secondary, and the conclusion of the witness, and further the objection was made to the entire deposition that it was incompetent because of the fact that the insurance contract shows that the doctor attached his certification that he had examined the insured and recommended her as a fit subject for insurance, and that by section 8770 of the 1931 Code the defendant is estopped to make any statement or offer any proof as to the previous condition of the health of the insured. This objection was overruled by the court, but later a change in the ruling was made and the deposition excluded. The deposition of Dr. Morrow involved in this assignment of error discloses that the doctor was at the time of taking the deposition a physician and surgeon at the state hospital in Kankakee, Illinois. It further discloses that he was assistant managing officer of such institution from May 1, 1916, until March 1, 1922, and that he has held the same position since September, 1927. It thus appears that during the time the insured was a patient in said hospital the witness, Dr. Morrow, was not connected therewith. The deposition further shows that the doctor was not testifying as to any personal knowledge in reference to the commitment, treatment, and discharge of the insured, and that in answering questions propounded to him he stated that he was testifying from the records of the hospital. No proof appears as to the authenticity of the records, and the records themselves were not attached to the deposition or offered in evidence. The appellant complains of the court's ruling in rejecting the deposition for the reason that no exceptions were filed to the deposition as provided by statute, section 11394, and relies upon Matthews v. Drug Company, 110 Iowa 231, 81 N. W. 464, as supporting its contention. We do not think the cited case supports the contention. In that case an attempt was made

to prove contents of a written contract and also to identify letters as secondary evidence. General exceptions were filed to the deposition and the court permitted its admission. This might have been, and undoubtedly was, upon the theory that the matter contained in the deposition was secondary evidence. But here we do not have the question of secondary evidence. Here we have Dr. Morrow testifying from records unidentified and the contents of which he had no personal knowledge. He does not testify, and there is no evidence, that he had any knowledge of or control over the records from which he was testifying. There is no showing that he had any personal knowledge of the matters sought to be disclosed by the records, and there is no showing that the entries as contained in the records were made contemporaneously by the witness or under his direction with the facts to which they relate. It has many times been held that hospital records are not admissible as evidence of the facts therein stated, unless properly identified and authenticated. Jordan v. Apter, 93 Conn. 302, 105 A. 620; State v. Trimble, 104 Md. 317, 64 A. 1026; Peck v. Parchen, 52 Iowa 46, 2 N. W. 597; Greenleaf v. Railroad Co., 30 Iowa 301, 302.

We find no error in the court's ruling excluding the deposition, and in this connection it may be noted that many of the assumed facts as contained in the hypothetical questions propounded to the medical experts were wholly based upon matters contained in the deposition, and that without considering the answers to such hypothetical questions there is absolutely no testimony in the record tending to show that the insured was insane at the time the policy in suit was issued.

■■■ The appellant next urges as error the giving of certain of the instructions by the court, and particularly instruction No. 6, containing the following sentence:

"If you find that said insured was totally and permanently disabled as the result of bodily disease or mental disease so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit, your verdict should be for the plaintiff."

The appellant's objection to this instruction is that it omitted the question as to when the bodily disease or mental disease occurred and originated, and the appellant argues that the jury might well consider under this instruction that the time when

the insured became permanently disabled was the time when she was committed to the Mt. Pleasant hospital. Taking this instruction alone, it might be subject to the objection lodged against it, but taking it in connection with the instructions as a whole, and especially instructions 3, 4, 5, and 7, the interpretation cannot be put upon it that the appellant claims.

In instruction No. 3, the court told the jury that the burden of proof was upon the plaintiff and before she could recover on the policy and supplementary contract she must establish by the greater weight or preponderance of the evidence each and both of the following propositions, to wit:

"That the insured, Anna Marie Foy, on or about July 27, 1928, became totally and permanently disabled, as the result of mental disease *occurring and originating after the issuance of said policy,* so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit." (Italics are ours.)

In paragraph No. 5, the court again instructed the jury as to the provisions of the supplementary contract and that plaintiff must show by due proof that, "as the result of bodily injury or disease *occurring and originating after the issuance of said policy,*" she had become totally and permanently disabled. (Italics are ours.)

In paragraph No. 7, the court instructed the jury that: "If they should find by the greater weight or preponderance of the evidence that the insured, Anna Marie Foy, on or about July 27, 1928, was suffering from a mental disease which totally and permanently disabled her from engaging in any occupation and performing any work for compensation or profit, but fail to so find that the disease with which the insured was suffering at said time *occurred and originated after the issuance of the policy* and supplemental contract sued upon, then your verdict should be for the defendant, for the supplementary contract expressly provides that the company will be liable to the insured or the insured's beneficiary only in case the insured is totally and permanently *disabled* as the result of bodily disease *occurring and originating after the issuance of said policy.*" (Italics are ours.)

The instructions must be read and considered as a whole, and when so read and considered, appellant's complaint as to

paragraph No. 6 thereof fails to impress us that there was error in the giving of said paragraph.

■■■ The same answer applies to appellant's objection to the giving of the special interrogatory. The special interrogatory was as follows: "At what time do you find that the insured, Anna Marie Foy, became totally and permanently disabled?" There was no error in submitting this interrogatory to the jury, although it seems that it was unnecessary to do so, as it was conceded by the appellant that Anna Marie Foy became totally and permanently disabled on the date that she was committed to the hospital for the insane at Clarinda, and the interrogatory as submitted to and answered by the jury adds nothing to the concession in the record.

The appellant further alleges as error the overruling of its motion for a new trial. This motion was based upon the grounds contained in the motion for a directed verdict, and also upon the exceptions and objections to the instructions. We have noticed in this opinion all of the grounds contained in defendant's motion for a new trial, and it is not necessary to extend this opinion by further discussing them. We find no error in the court's order overruling such motion. An affirmance necessarily follows.—Affirmed.

KINTZINGER, C. J., and MITCHELL, POWERS, DONEGAN, HAMILTON, and PARSONS, JJ., concur.