[No. 13731. Department One. — December 19, 1890.]

T. D. KELLOGG, APPELLANT, *v.* W. G. COCHRAN ET AL., RESPONDENTS.

INSANE PERSONS — RESTORATION TO CAPACITY — CONSTRUCTION OF CODE. — The provisions of section 1766 of the Code of Civil Procedure authorizing the court to restore a person adjudged insane or incompetent is only applicable to those for whom guardians have been appointed under section 1764 of the same code, and does not apply to persons committed to insane asylums under the regulations of the Political Code.

ID. — DISCHARGE FROM INSANE ASYLUM — JURISDICTION OF COURT — HABEAS CORPUS. — No court in this state is authorized to discharge a person who has been committed to an insane asylum, or to restore him to capacity, under any circumstances, except upon writ of *habeas corpus*.

ID. — POWER OF OFFICERS OF ASYLUM. — The power to discharge an inmate of an insane asylum otherwise than upon *habeas corpus* is vested exclusively in the officers of the asylum, and includes the power to determine whether the patient has recovered, and the authority to discharge persons who have sufficiently recovered, and also persons who have been improperly committed.

ID. — EFFECT OF DISCHARGE FROM ASYLUM — RESTORATION TO CAPACITY — RIGHT TO SUE. — The effect of a discharge by the officers of an asylum of an insane inmate, if no guardian has been appointed under the act of March 9, 1885, is, to restore the person discharged to legal capacity to sue.

ID. — MALICIOUS PROSECUTION — COMMITMENT OF SANE PERSON TO ASYLUM. — An action for damages will lie for a malicious prosecution on a charge of insanity, resulting in an order of commitment to an insane asylum of a person who was not insane.

ID. — ORDER OF COMMITMENT — EVIDENCE — PROBABLE CAUSE. — In such action, the order of commitment is not conclusive evidence against the

plaintiff of his insanity at any time, or of probable cause for the prose-
cution.

REHEARING — PRACTICE. — A rehearing in the supreme court will not be
granted in order to consider points not made in the argument upon which
the case was originally submitted.

APPEAL from a judgment of the Superior Court of Los
Angeles County.

The facts are stated in the opinion.

*Chapman Bros.*, and *J. M. Damron*, for Appellant.

All persons who have reached years of discretion are
regarded *prima facie*, by a rebuttable presumption of
law, to be sane. (Wharton on Evidence, 2d ed., sec.
1252, and authorities there cited.) Incapacity as a
ground of demurrer must appear on the face of the
complaint. (Code Civ. Proc., sec. 430.) Insane persons
received into the asylum must, upon recovery, be dis-
charged therefrom. (Pol. Code, sec. 2197.) The com-
plaint alleging that the plaintiff was "discharged," he
must be presumed to have been so discharged in the
proper way. (Code Civ. Proc., sec. 1963, subd. 15.)
Under our codes, there are two proceedings provided
for with reference to the insane. (Code Civ. Proc., secs.
1763–1766; Pol. Code, secs. 2136–2222.)

*Wells, Guthrie & Lee*, and *Gottschalk & Luckel*, for Re-
spondents.

The averments in the complaint have destroyed the
presumption of law as to sanity; for all contracts of a
lunatic or person of unsound mind, made after an in-
quisition and confirmation thereof, are absolutely void,
until by permission of the court he is allowed to assume
control of his property. (*L'Amoreux* v. *Crosby*, 2 Paige,
422; 22 Am. Dec. 655; *Wadsworth* v. *Sharpsteen*, 8 N. Y.
388; 59 Am. Dec. 499; *Hughes* v. *Jones*, L. R. 5 App. C.
633.) In such cases, the lunacy record, as long as it
remains in force, is conclusive evidence of incapacity;

and from the time of the adjudication of insanity until the restoration to reason has been judicially determined, the person declared to be of unsound mind is the ward of the court, and is legally an incompetent person. (*Redden* v. *Baker*, 86 Ind. 195; *L'Amoreux* v. *Crosby*, 2 Paige, 422; 22 Am. Dec. 655; *Wadsworth* v. *Sharpsteen*, 8 N. Y. 388; 59 Am. Dec. 499; *Wadsworth* v. *Sherman*, 14 Barb. 169; *Leonard* v. *Leonard*, 14 Pick. 280; *Imhoff* v. *Witmer*, 31 Pa. St. 245; *In re Patterson*, 4 How. Pr. 33; *McCormick* v. *Littler*, 85 Ill. 65; 28 Am. Rep. 610.) Plaintiff's discharge from the asylum is not a restoration to capacity in law. Section 1766 of the Code of Civil Procedure points out the procedure for restoration to capacity, which is by judicial process, and is exclusive.

VANCLIEF, C. — The purpose of this action is to recover from the defendants damages for a malicious prosecution of the plaintiff as an insane person, and causing him to be unlawfully arrested and committed to the insane asylum at Stockton. A demurrer to the complaint was sustained by the court. The plaintiff declined to amend his complaint, and final judgment was thereupon rendered against him, dismissing his complaint, and for costs, from which he appeals on the judgment roll.

The grounds of demurrer are, that the complaint does not state facts sufficient to constitute a cause of action; and "that it appears, upon the face of the complaint, that the plaintiff has not the legal capacity to sue herein."

The substance of those parts of the complaint relevant to these grounds of demurrer is as follows: That on January 28, 1889, the defendants willfully, maliciously, unlawfully, and without probable cause, "caused and procured the plaintiff to be arrested and committed to the state insane asylum at Stockton, state of California, on the charge of insanity; that under and by virtue of said commitment plaintiff was unlawfully and against his will detained and imprisoned in said state insane

asylum at Stockton, on said charge of insanity, for and during the period from said twenty-eighth day of January, 1889, up to and including the twentieth day of February, 1889, whereupon said plaintiff was then and there given leave of absence, and afterwards, to wit, April 13, 1889, was discharged; that plaintiff was not on said 28th of January, 1889, or ever, at any other time before or since said day, dangerously insane, or insane at all, nor was he at any of said times so far disordered in his mind as to injure health, person, or property, all of which was known by said defendants before and at the time of said arrest and commitment."

The learned counsel for respondents contend that the demurrer was properly sustained on the ground that the plaintiff had not legal capacity to sue, for the reasons: 1. That it appears, on the face of the complaint, that the plaintiff had been adjudged to be insane on January 28, 1889, by the judge of a court of record pursuant to section 2217 of the Political Code, relating to commitments to the state insane asylums; and 2. That such adjudication is conclusive upon the plaintiff, not only that he was insane at the time he was so adjudged, but that he continued to be insane at the time this action was commenced, unless before that time he had been found to be of sound mind, and capable of taking care of himself and property, as authorized by section 1766 of the Code of Civil Procedure.

It is true that where guardians have been appointed for persons who, by reason of their insanity, imbecility, or habitual drunkenness, are mentally incompetent to manage their property, under statutes in other states similar to article 2, title 11, part 3, of our Code of Civil Procedure, sections 1763–1766, it has been held that an adjudication of such incompetency is conclusive against all persons dealing with the ward, until he is restored to capacity to manage his own affairs by an order of court similar to that authorized by section 1766

of the Code of Civil Procedure.   The cases of *Wadsworth*
v. *Sharpsteen,* 8 N. Y. 388, 59 Am. Dec. 499, and *Imhoff*
v. *Witmer's Adm'r,* 31 Pa. St. 243, aie fair samples of the
strongest cases to this effect.   In the latter case the court
said: "The object of the statute was protection and
guardianship over persons and estates of parties want-
ing capacity to take proper care of either, and to preserve
the property of such from being squandered or improv-
idently used to their own injury and that of their
families, if they have any.   It is not necessary to adduce
reasons to prove the self-evident proposition that to ad-
mit the capacity of control to exist in the lunatic or
habitual drunkard over his estate, after inquisition
settling his condition in this respect, or submit it to be
controverted by evidence of lucid intervals or sobriety
at the moment of contracting, would leave the estates
of these unfortunate classes about as much exposed as
before proceedings had in regard to them.   The inquisi-
tion and decree standing of record was intended for
notice to all the world of the incapacity of the particular
party to contract.   It is the judgment of the law to this
effect, and, as a consequence, his acts in regard to his
property are absolutely void while the condition exists."

In the case cited from 8 New York, the court said:
"The right of the committee to the custody and control
of the property is not superseded during the drunkard's
sober intervals; and therefore during such intervals the
drunkard has no more authority to deal with or dispose
of the property than while he is in a state of intoxica-
tion.   If it were otherwise, the proceedings would furnish
a very ineffectual security against waste and improvi-
dence.   Every transaction would be open to litigation
upon the question whether it took place while the
drunkard was in a state of sobriety or intoxication; and
the committee could not execute his trust with safety to
himself or benefit to the drunkard or his family."

These quotations are made merely to show that the

reasons assigned in those cases for holding an adjudication of incompetency conclusive until set aside cannot be applied to the order of a judge in this state committing a person to the state insane asylum under the provisions of the Political Code, although they may be applicable to adjudications of our courts in proceedings had under section 1766 of the Code of Civil Procedure. But whether the reasons assigned in those cases are to be considered sufficient for holding an adjudication of incompetency under section 1766 of the Code of Civil Procedure conclusive against the person adjudged incompetent, until set aside as therein provided, need not be decided in this case, since it seems clear that the proceeding against insane and other mentally incompetent persons, authorized by the Code of Civil Procedure, is entirely distinct from the proceedings authorized by the Political Code for the commitment of insane persons to the state insane asylum.

The provision in section 1766 of the Code of Civil Procedure authorizing the court to restore the person adjudged insane or incompetent to capacity is only applicable to persons adjudged insane or incompetent, and for whom guardians have been appointed under section 1764 of the same code. The application of it to persons committed to the asylums would be utterly inconsistent with the government of those institutions according to the requirements and regulations of the Political Code. After a person has been committed to either of the insane asylums on a charge of insanity, and received into the asylum, no court in this state is authorized to discharge him therefrom, or to restore him to the capacity of a sane pers..., under any circumstances, except upon writ of *habeas corpus.* The power to discharge him otherwise than upon *habeas corpus* is vested exclusively in the officers of the asylum.

Section 2197 of the Political Code provides: "Insane persons received in the asylums must, upon recovery,

be discharged therefrom." This implies the power to determine whether or not the patient has recovered.

By an act of March 9, 1885, the resident physician is authorized, and it is made his duty, to discharge persons who have been *improperly committed.* (Pol. Code, p. 350.)

By another act of March 9, 1885 (Pol. Code, p. 342), it is provided that the kindred or friends of an inmate of the asylum may apply to the judge who committed him for an order to be directed to the trustees of the asylum for his removal to their custody; and upon their proving that they are capable and suitable to take care of him, and to give protection against his insane acts, the judge may issue the order. But the act further provides that "the trustees shall reject all other orders or applications for the release or removal of any insane person, except the order of a court or judge on proceedings in *habeas corpus.*" (See also a like provision in section 19 of "An act to provide for the future management of the Napa state asylum," approved March 6, 1876. Stats. 1875–76, p. 133.)

It would seem, therefore, not only that the power to discharge an inmate of the asylum is vested solely in the officers of the asylum, but that such power is to be exercised upon one of only two grounds: 1. That the insane inmate has recovered; and 2. That he had been improperly committed. I think the effect of a discharge on either ground, if no guardian had been appointed, under the act of March 9, 1885 (Pol. Code, p. 342), would be to restore the person discharged to legal capacity to sue. A discharge on the first ground is an adjudication, by competent authority, that the person had recovered from insanity; and a discharge on the second ground, by like authority, overrules or nullifies the order of commitment, and leaves the person committed in the same *status,* as to capacity to sue, that he was in before he was committed. (Civ. Code, sec. 40.) Be-

sides, I think the order of commitment is not conclusive evidence against the plaintiff in this action of his insanity at any time, or of probable cause for the prosecution of which he complains. For if it is so, it is difficult to conceive how he is to prove a cause of action which depends upon the truth of his averments, that he was not insane to the degree required by section 2217 of the Political Code, or at all, at the time the order was made, and that the prosecution was without probable cause. If he is estopped by the order of commitment from proving these averments, it would seem to follow that no action for a malicious prosecution on a charge of insanity resulting in an order of commitment can be maintained; yet the authorities sanction such actions. (Cooley on Torts, 176 et seq.) That the order of commitment would not thus estop or conclude the plaintiff in a proceeding by writ of *habeas corpus* is obvious; and we have seen that it is not final or conclusive as to the resident physician of the asylum, whose duty it is to disregard it if in his opinion it was not properly made. Indeed, the final determination as to whether the person committed is insane or not is to be made and announced by the resident physician of the asylum. The proceeding before the judge is only preliminary, and is analogous to the preliminary examination of a criminal charge by a magistrate.

As the only ground of demurrer argued here is, that the plaintiff has not the legal capacity to sue, and no particular in which the complaint fails to state a cause of action has been suggested by counsel, or discovered, I think the judgment should be reversed, and the court below directed to overrule the demurrer.

The COURT. — For the reasons given in the foregoing opinion, the judgment is reversed, and the court below directed to overrule the demurrer.

A petition for a rehearing having been filed, the following opinion was rendered thereon on the 17th of January, 1891:—

The COURT. —In submitting this case for decision, respondents argued but a single point raised by their demurrer to the appellant's complaint.

We considered that objection, and decided it correctly.

In their petition for a rehearing, other objections to the complaint are called to our attention. But we have decided—and with manifest propriety—that we will not grant a rehearing in order to consider points not made in the argument upon which the case was originally submitted.

A respondent whose demurrer has been sustained by the superior court ought to fairly present in this court every objection upon which he relies.

We cannot be expected to scrutinize the record for the purpose of discovering points which counsel have not taken the trouble to specify.

Rehearing denied.