[S. F. No. 4702.   Department One.—April 30, 1908.]

GEORGE ALBERT ALDRICH, Appellant, v. ANNIE ALDRICH BARTON et al., Respondents; HELEN H. GREIG et al., Interveners, Respondents.

INSANE PERSONS—RESTORATION TO CAPACITY—CONSTRUCTION OF CODE—GUARDIANSHIP.—The provisions of section 1766 of the Code of Civil Procedure, respecting the restoration of an insane person to capacity, are not applicable to one who has been confined in an insane asylum without having been put under guardianship.

ID.—CERTIFICATE OF DISCHARGE FROM STATE HOSPITAL—WANT OF AUTHORITY—COLLATERAL ATTACK.—A certificate of discharge from a state hospital by an official having jurisdiction to make it, under section 2189 of the Political Code, is made by that section evidence of an adjudication that the person discharged had recovered; but it is open to collateral attack for want of authority to make it, and it may be shown that when it was made the apparently discharged person was not an inmate of the hospital, nor within the control of the superintendent when the certificate was made; and upon such showing, the certificate is ineffectual for any purpose.

ID.—TRUST UNDER WILL—CONSTRUCTION—ACTUAL RECOVERY FROM MENTAL INCOMPETENCY.—Where a trust under a will provided for title in trustees to provide an income for the support of an insane person, "so long as he shall be incompetent to hold and properly manage his affairs and property," the principal to be turned over to him upon his restoration "to mental soundness and capacity," the trust is to be construed as continuing until the actual recovery, *in fact*, from mental derangement or incompetency, rather than the mere making of an order purporting to declare such recovery.

ID.—CERTIFICATE PRIMA FACIE EVIDENCE.—A certificate of discharge granted under the act of 1897 (Stats. 1897, p. 331), or under the act of 1901 (Stats. 1901, p. 639), is merely *prima facie* evidence of sanity, and may be overcome by proof to the contrary.

ID.—RIGHT TO TERMINATE TRUST UNDER WILL—PROOF REQUIRED—SUP-
PORT OF FINDING.—In order to terminate the trust under the will
the discharged person must prove restoration to a condition of
competency in fact to manage his affairs. On this issue, the find-
ing of the court was against him, and is supported by sufficient
evidence.

APPEAL from a judgment of the Superior Court of
Alameda County. John Ellsworth, Judge.

The facts are stated in the opinion of the court.

Aldrich & Gentry, for Appellant.

Drown, Leicester & Drown, for Defendants, Respondents.

A. Everett Ball, for Interveners, Respondents.

SLOSS, J.—William A. Aldrich, the father of the plaintiff,
died on February 25, 1892, leaving a will dated the twenty-
ninth day of October, 1891. In May, 1888, the plaintiff,
George Albert Aldrich, had been duly committed to the Napa
State Asylum for the Insane by a judge of the superior
court of Alameda County, and he remained a patient in said
asylum until after his father's death.

By said will the testator gave the residue of his estate to
trustees, in trust, among other things, to appropriate and pay
out of the net income derived from one fourth of such residue
"so much thereof as may be required for the proper and com-
fortable maintenance, support and care of my son George
Albert Aldrich, now at the state asylum for the insane in
Napa County, California, so long as he shall be incompetent
to hold and properly manage his affairs and property. Upon
the restoration of my said son George Albert Aldrich to
mental soundness and capacity to turn over and pay and de-
liver to him the said one fourth of such residue of my estate,
with all increment and accumulations thereof, to have and to
hold the same to him and his heirs forever. If, however, my
said son George Albert Aldrich shall prove to be permanently
of unsound mind and shall so continue up to the time of his
death, the said one fourth of such residue of my estate shall,
upon his death, pass to and be thereupon paid and delivered
to and distributed among my heirs at law then living, ac-

·cording to the laws of the state of California then in force relating to the succession to the property of the estate of those dying intestate." The will was duly admitted to probate, and on the thirty-first day of May, 1893, at the close of the administration of the estate, a decree of distribution was made, whereby the residue of the estate was distributed to the trustees named in the will upon the trusts therein declared. The defendants Annie Aldrich Barton and Helen Aldrich Dunning are the sole remaining trustees.

This action was brought by plaintiff against such trustees to obtain a decree terminating the trust and requiring the defendants to account for and turn over to plaintiff one fourth of the residue of the estate. The complaint alleges that on or about January 30, 1905, the medical superintendent of the Napa State Hospital for the Insane filed with the secretary of the board of managers of said Napa state hospital his certificate of discharge of plaintiff; that on the first day of February, 1905, a copy of said certificate, certified by the secretary of the board of managers of said Napa state hospital, was filed with the county clerk of Alameda County and entered by said county clerk in a book kept by him for that purpose. It is further alleged that plaintiff was, prior to the commencement of this action, discharged from said asylum and restored to mental soundness and capacity.

The defendant trustees answered, admitting the filing and recording of the discharge in question, but averring on information and belief that said certificate of discharge is void and of no legal effect, and that the medical superintendent of the Napa State Hospital for the Insane did not, when he signed, made, or filed said certificate of discharge, have any jurisdiction over or concerning the person of the plaintiff or the subject-matter of the discharge of the plaintiff from the said hospital. They further alleged that at the time of said discharge, and at all times since the first day of January, 1905, the plaintiff was not in said hospital, nor a patient at said hospital, nor an inmate thereof, nor within the control nor under the jurisdiction of said hospital, or of the medical superintendent thereof or any of the officers of the same, nor within said county of Napa. The answer further denied that the plaintiff was, prior to the commencement of this action, or that he has been at any time restored to

mental soundness or capacity. Other matters are set up in the answer, but the statement here made is sufficient to make clear every point which need be considered in disposing of this appeal. There was also a complaint in intervention, filed by persons claiming to be heirs at law of the testator, and as such entitled to an interest in the trust fund upon the death of plaintiff, if he should remain incompetent until his death. The interveners joined with the defendants in opposing plaintiff's prayer for relief.

The court found in favor of the foregoing allegations and denials of the answer. With reference to the mental condition of the plaintiff, there is a finding numbered 11, as follows: "That said plaintiff George Albert Aldrich was not, at the date of the death of his said father, William A. Aldrich, to wit: on the 25th day of February, 1892, and that he was not on the 12th day of November, 1902, or on the said 30th day of January, 1905, and that he has not been at any time since the date of the death of his said father, and is not now of sound mind or competent to hold and properly manage his affairs and property, or restored to mental soundness or capacity; but that ever since the date of the death of his said father he has been, and he is now, of unsound mind and incompetent to hold and properly manage his affairs." As conclusions of law the court found that the discharge of plaintiff from the said asylum did not terminate or extinguish the said trust, but that the same still continues. A decree, denying the plaintiff any relief and declaring the right of the defendants to hold the property upon such trust, followed. The plaintiff appeals and brings up the evidence by a bill of exceptions.

While the record contains numerous exceptions, but a single question is presented. The plaintiff relies exclusively upon the certificate of discharge given by the superintendent of the state asylum, or hospital, as it is now called, on January 31, 1905. By an act of March 26, 1903 (Stats. 1903, p. 485), chapter 1 of title V of part 3 of the Political Code was repealed, and there was substituted therefor a new chapter comprising sections 2136 to 2199, inclusive, of that code, and dealing with the care and custody of insane persons, etc. Section 2189 deals with the discharge of patients from state hospitals. Subdivision 1 of that section authorizes the superintendent of a state hospital to discharge "A patient who,

in his judgment, has recovered," and subdivision 6 provides that "When any person is discharged as recovered from a state hospital, a copy of the certificate of discharge duly certified by the secretary of the board of managers, may be filed for record with the clerk of the superior court of the county from which said person was committed. . . . Such certified copy of such certificate and the record of the same shall have the same legal effect as the original, and if no guardian has been appointed for such person, as provided by sections 1763 and 1764 of the Code of Civil Procedure, such certificate and duly certified copies thereof and such record thereof shall have the same legal force and effect as a judgment of restoration to capacity made under the provisions of section 1766 of the Code of Civil Procedure."

The contention of the plaintiff is that, by this provision, the certificate of discharge of the superintendent is made final and conclusive upon all parties. It is expressly conceded that if the court was authorized to go behind the certificate and inquire into the question of whether, as a matter of fact, the plaintiff had ever become competent, the evidence is ample to sustain finding 11 above quoted, to the effect that he had not at any time since the date of his father's death been of sound mind or competent to hold and properly manage his affairs and property, or restored to mental soundness or capacity.

There is no discussion in the briefs regarding the proper construction of the trust clause, both parties apparently assuming that the event upon which the testator intended to make the plaintiff's right to the principal of one fourth of the residue depend was his actual recovery, in fact, from mental derangement or incompetency, rather than the mere making of an order purporting to declare such recovery. And this, we think, is the proper interpretation of the clause. The testator provided that the trust should continue so long as the plaintiff should be incompetent. Upon his "restoration to mental soundness and capacity," he was to receive the corpus of the trust. The phrase "restoration to capacity," standing alone, might be construed to mean a judicial or other adjudication of restoration, regardless of the actual fact. But the only proceeding known to our law which, at the date of testator's will, could with propriety be designated

as a "restoration to capacity" was the proceeding defined in section 1766 of the Code of Civil Procedure, and that proceeding was not applicable to the case of one who was confined in an insane asylum without having been put under guardianship. (*Kellogg* v. *Cochran,* 87 Cal. 192, [25 Pac. 677].) Leaving out of consideration such relief as might be afforded by a court on *habeas corpus,* the asylum authorities alone had power to affect the *status* of such person, and while a discharge by such authorities was an adjudication that the person committed has recovered from insanity (*Kellogg* v. *Cochran,* 87 Cal. 192, [25 Pac. 677]), it afforded, prior to the enactments of 1903, only *prima facie* evidence of legal capacity in the person so discharged. (Civ. Code, sec. 40.) Such order of discharge is not fairly within the meaning of the phrase "restoration to mental soundness and capacity," as used by the testator. What effect it may have as evidence of such restoration is another question.

The appellant, as has been stated, takes the position that a certificate of discharge which formerly only raised a presumption of capacity is, if issued under section 2189 of the Political Code, as that section now reads, conclusive evidence of restoration to capacity of the person discharged. This contention is based upon the provision of the statute that such certificate shall have "the same legal force and effect" as a judgment of restoration under section 1766 of the Code of Civil Procedure. The proceeding defined in section 1766 is, in its nature, a judicial proceeding. In it a court, upon application by petition on behalf of a person declared incompetent, and after notice to adverse parties and a hearing, is authorized to "judicially determine" the fact of the restoration to capacity of such person. The judgment rendered in such case is one "in respect to the personal, political, or legal condition or relation of a particular person," and, when rendered by a court having jurisdiction to pronounce the judgment or order, is "conclusive upon . . . the condition or relation of the person." (Code Civ. Proc., sec. 1908.) The decision in *Kellogg* v. *Cochran,* 87 Cal. 192, [25 Pac. 677], established the proposition that this proceeding had no application to the case of a person who had been committed to an insane asylum, but had not been put under guardianship by virtue of sections 1763 and 1764 of the Code of Civil Pro-

cedure.    The legislature, in enacting section 2189 of the
Political Code, doubtless intended to afford to persons who,
upon recovery, should be discharged from insane asylums,
some record proof, which should operate to establish their
recovery in the same way that the judgment of restoration
under section 1766 of the Code of Civil Procedure operated
in the case of persons who had been declared incompetent,
and for whom guardians had been appointed.    That is to say,
the certificate, *when made by an official having jurisdiction to
make it,* was made evidence of an adjudication of the fact
that the person discharged had recovered.    But the argument
of the appellant goes, and, as will appear, necessarily goes,
further than this.    He contends that the certificate of dis-
charge, *in and of itself, conclusively proves the jurisdiction
of the superintendent to make it*; that is to say, that it can-
not be collaterally attacked even for want of jurisdiction,
unless such want of jurisdiction appears on the face of the
record.    This is, no doubt, the rule applicable to judgments
of courts of general jurisdiction.    (*Carpentier* v. *Oakland,*
30 Cal. 439; *Hahn* v. *Kelly,* 34 Cal. 402, [94 Am. Dec. 742];
*Drake* v. *Duvenick,* 45 Cal. 464; *Lyon* v. *Petty,* 65 Cal. 325,
[4 Pac. 103]; *Bennett* v. *Wilson,* 133 Cal. 379, [85 Am. St.
Rep. 207, 65 Pac. 880].)    We need not here decide whether
the superior court, acting under the provisions of section
1766 of the Code of Civil Procedure, is to be regarded as the
court of general or one of limited jurisdiction.    In any view,
we are satisfied that the statute giving to the certificate of dis-
charge the same legal force and effect possessed by a judg-
ment under section 1766 of the Code of Civil Procedure is
not to be construed as putting it beyond the power of a party
against whom such certificate is offered to show that in fact it
was issued in a case in which the superintendent of the asylum
had no power to act.    It is not to be supposed that the legis-
lature intended to give to an executive officer, acting *ex parte,*
the power to determine conclusively, even as against col-
lateral attack, that he had jurisdiction, when in fact he had
none.    It is not necessary to decide whether the effect con-
tended for could, under fundamental constitutional restric-
tions, be given to a certificate such as the one here relied on.
Nor need we consider, whether, even if issued in a case
within the jurisdiction of the superintendent, such certificate

can constitutionally be made conclusive evidence of restoration to capacity. It is enough, for the purposes of this case,. to say that the reasonable interpretation of section 2189 of the Political Code is that it purports to make a certificate conclusive as against collateral attack, if issued by one having authority, in the particular case, to make it, but that such certificate always remains open to attack for want of such authority. The purpose of this section was to give to a certificate of discharge the effect of a judgment, as an adjudication of a fact, not to confer upon it any evidentiary value as conclusive proof of jurisdiction to make such adjudication.

The court found that, at the time of said discharge, the plaintiff was not in the Napa State Hospital for the Insane, nor a patient at said hospital, nor an inmate thereof, nor within the control of the hospital or the medical superintendent thereof. These findings are fully sustained by the evidence, which shows that plaintiff was released from the asylum on parole in 1892. Between that time and 1900 he went to the asylum occasionally to visit the physicians. Since 1900 he has not been to the asylum at all. In 1902 there was granted to plaintiff, at his request, a certificate of discharge. The discharge of 1902, whether valid or not, was treated as effectual by the asylum authorities and by the plaintiff. Plaintiff had no communication thereafter with any official of the asylum until 1905, when he applied for the certificate now relied on. This certificate was issued by Dr. Stone, whose incumbency of the office of medical superintendent began after plaintiff left the asylum. The certificate was. issued after an examination of plaintiff made by Dr. Stone at San Francisco.

There can be no doubt that the jurisdiction of the superintendent of an insane asylum to discharge a person as recovered from insanity exists, under section 2189 of the Political Code, only where such person is a patient in the asylum. The only authority given to the superintendent by the statute is to discharge a "patient" and that by such patient is meant, one who has been committed to the asylum and has remained there (except in case of a temporary absence as on parole) for care and treatment, is clear from a reading of the entire chapter of the Political Code dealing with the commitment.

and care of insane persons. One who has for many years been away from the asylum, claiming, without opposition, to have been discharged by virtue of an order purporting to have that effect, and over whom the asylum authorities do not exercise, or claim the right to exercise any power or restraint whatever, cannot be said to be a "patient" within the meaning of the law. Such was the condition of the plaintiff, as is found by the court on ample evidence.

Nor would plaintiff's situation be improved if the discharge of 1902 could be regarded as valid, either under the act of 1897 covering the commitment and care of insane persons (Stats. 1897, p. 331), or under the act of 1901, providing for the discharge of persons who have been committed to a hospital for the insane, but are not confined in such hospital. (Stats. 1901, p. 639.) A certificate granted under either act would afford no more than *prima facie* proof of sanity.

The certificate of 1905, having been issued without authority, was ineffectual for any purpose, and the plaintiff's right to recover depended upon his establishing that he had in fact been restored to a condition of competency. On this issue, the finding was against him, and, as is conceded, there was sufficient evidence to support the finding.

Since every point made by appellant is based on the claim that the certificate was conclusive in his favor, it follows that the court below rightly gave judgment for the defendants.

The judgment is affirmed.

Angellotti, J., and Shaw, J., concurred.