[Civ. No. 1915.   First Appellate District.—September 28, 1916.]

## EDWARD L. KNORP, Appellant, v. BOARD OF POLICE COMMISSIONERS, etc., et al., Respondents.

POLICE OFFICER — REINSTATEMENT — MANDAMUS — STATUTE OF LIMITATIONS.—The right of a member of the police department of the city and county of San Francisco, whose resignation was accepted on account of collapse due to mental strain, to be reinstated, is barred by laches and the provisions of sections 338 and 343 of the Code of Civil Procedure, where the *mandamus* proceeding to compel such reinstatement was not instituted until some seven years and eight months after the date of his certificate of discharge from the state hospital to which he was committed, although the proceeding was instituted within the statutory period after his restoration to capacity pursuant to the provisions of section 1766 of the Code of Civil Procedure, where the petition for such restoration failed to show that there had been any previous guardianship proceedings.

INSANE PERSONS—RESTORATION TO CAPACITY—ABSENCE OF GUARDIANSHIP PROCEEDINGS — JURISDICTION OF OFFICERS OF ASYLUM. — The superior court is without jurisdiction, under the provisions of section 1766 of the Code of Civil Procedure, to restore to capacity a person adjudged to be insane and committed to an insane asylum, without having been put under guardianship, as such jurisdiction, in the absence of guardianship proceedings, is vested exclusively in the officers of the hospital.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.   James M. Troutt, Judge.

The facts are stated in the opinion of the court.

Von Schrader & Cadwalader, for Appellant.

Percy V. Long, City Attorney, and D. S. O'Brien, Assistant City Attorney, for Respondents.

LENNON, P. J.—In this proceeding the plaintiff sought a writ of mandate against the defendants, sitting as the board of police commissioners of the city and county of San Francisco, commanding them to reinstate the plaintiff as a member of the police department of said city and county.   The

o

appeal is from a judgment entered in favor of the defendants, and from an order denying the plaintiff a new trial.

The facts of the case are practically undisputed and, in so far as they are pertinent to a discussion of the paramount point in the case, are, substantially stated, these: On the sixth day of November, 1899, the plaintiff became a member of the police department of said city and county, and was thereafter an active member of the department until June, 1901, when he "collapsed on account of mental strain." The records of the police commission show that on July 2, 1901, the plaintiff's application for leave of absence for three months without pay was granted by the board, and that on September 24, 1901, he tendered his resignation as a member of the police department, which was accepted "to take effect from ——." On November 22, 1901, the plaintiff was adjudged to be insane by the superior court of said city and county, and committed to the care of the Napa State Hospital, where he remained as a patient and an inmate until November 16, 1902, when he was released on leave of absence in care of his brother, George H. Knorp. Thereupon plaintiff returned to San Francisco, where he resided with his brother until May 24, 1904, when he in person applied for and procured from the medical superintendent of the Napa State Hospital a certificate discharging him from the custody and control of said institution upon the ground of his mental recovery. Thereafter, on October 24, 1911, he petitioned the superior court of the city and county of San Francisco for an order restoring him to capacity pursuant to the provisions of section 1766 of the Code of Civil Procedure, and the court made the order. The trial court in its findings of fact, among other things, found that plaintiff's resignation as a member of the police department was tendered by him and accepted by the board of police commissioners on September 24, 1901, and that his cause of action for reinstatement was, as pleaded in the answer of the defendants, barred by the provisions of sections 338 and 343 of the Code of Civil Procedure and the laches of the plaintiff.

The latter, we think, is fully sustained by the evidence. The action was not instituted until March 26, 1912, some seven years and eight months after the date of the medical superintendent's certificate finally discharging the plaintiff from the custody and control of the state as recovered. That

date, in our opinion, must be taken as the time when the plaintiff was restored to capacity, rather than October 24, 1911, the date of the decree of the superior court which purported to judicially determine his restoration to capacity. The plaintiff's petition to be restored to capacity, which was the basis of the decree of the superior court, did not aver that he had been under guardianship by virtue of the provisions of sections 1763 and 1764 of the Code of Civil Procedure, at the time of his commitment for insanity to the state hospital; and consequently the superior court had no jurisdiction to hear and determine the question of the plaintiff's mental capacity. Such jurisdiction, in the absence of guardianship proceedings, was vested exclusively in the officers of the state hospital (*Kellogg* v. *Cochran*, 87 Cal. 192, [12 L. R. A. 104, 25 Pac. 677]), and therefore the plaintiff's discharge from the hospital upon the ground of his recovery was an adjudication by competent authority that he was sane on the day and date of his discharge. (*Kellogg* v. *Cochran*, 87 Cal. 192, [12 L. R. A. 104, 25 Pac. 677].) The case of *Aldrich* v. *Barton*, 153 Cal. 488, [95 Pac. 900] has no application to the facts of the present case. There the patient had been away from the state hospital for many years, claiming all the while, without opposition from the officers of the hospital, to have been discharged and at liberty under a purported order of discharge; and the supreme court held that under those circumstances the officers of the state hospital lost the custody and control of the patient, and were therefore ousted of jurisdiction to make a second certificate of discharge. That case recognizes the right of the medical superintendent of a state hospital to release a patient on parole; and that is precisely what was done in the present case. During his leave of absence the plaintiff was constructively in the custody and under the control of the state; and it was not essential to the exercise of jurisdiction to discharge the plaintiff that he should have been actually confined in the state hospital at the time the certificate of discharge was applied for and granted. (*People* v. *Geiger*, 116 Cal. 440, [48 Pac. 389].) The certificate of discharge dated May 24, 1904, was at least *prima facie* proof of the plaintiff's restoration to capacity upon that date (*Aldrich* v. *Barton*, 153 Cal. 488, [95 Pac. 900]), and nothing appearing to the contrary, the

presumption must prevail that he was then and ever since has been sane.

It is not disputed that the plaintiff's purported resignation as a member of the police department was accepted and dealt with by the board of police commissioners upon the theory that it took effect immediately, notwithstanding the fact that the records of the commission show that it was to take effect at a time not specified. In short, it is not disputed that the plaintiff was ousted from his position as a police officer by the board on September 24, 1901, the date of his purported resignation; that being so, his cause of action for reinstatement accrued upon that date; and giving him credit for the time during which he was under the disability of insanity, the statute, in our opinion, commenced to run against his cause of action upon May 24, 1904, the date of his restoration to capacity, as shown *prima facie* by the medical superintendent's certificate of discharge, and consequently his cause of action was barred by the statute of limitations. (Code Civ. Proc., secs. 352, 338, 343; *Farrell* v. *Board of Police Commrs.*, 1 Cal. App. 5, [81 Pac. 674]; *Jones* v. *Board of Police Commrs.*, 141 Cal. 96, [74 Pac. 696]; *Dodge* v. *Board of Police Commrs.*, 1 Cal. App. 608, [82 Pac. 699].)

It was not contended upon behalf of the plaintiff in the court below, nor is it contended here, that he did not have knowledge of the fact that his purported resignation was accepted and treated as having gone into effect as of the date of its tender; and his only excuse for not sooner instituting his action is that he could not do so until he had been restored to capacity by the decree of the superior court. But such decree, as has been pointed out, was, under the facts of the present case, neither a necessary nor a valid adjudication of his competency, and consequently will not avail to toll the statute of limitations, nor relieve him from the penalty of his undoubted laches in instituting the action.

We need not concern ourselves with the question as to whether or not the evidence sustains the finding that the plaintiff did in fact tender his resignation, and that the same was accepted and took effect immediately, for the fact still remains that the plaintiff, under and by virtue of his purported resignation and its acceptance, ceased to be a member of the department from the date thereof; and even if it be conceded that he was thereby wrongfully deprived of his

office, the finding upon the statute of limitations and the laches of the plaintiff being supported by the evidence, it alone will suffice to support the judgment.

This disposes of all of the points presented in the appeal which we deem worthy of discussion.

The judgment and order are affirmed.

Kerrigan, J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 27, 1916.