[S. F. No. 13014. In Bank.—July 15, 1929.]

R. SHAW, as Administrator, etc., Respondent, v. JAMES B. FEEHAN et al., Appellants.

562

James B. Feehan, *in pro. per.,* and Joseph Farry for Appellants.

James Snell and A. M. Runnells for Respondent.

CURTIS, J.—This action was instituted to set aside and have declared illegal and void two promissory notes, and a trust deed given to secure their payment, on the ground that James F. Fleming, whose name was signed to said notes

and deed, had, prior to the date of said notes and deed, by an order and judgment of the superior court of San Benito county, been declared and adjudged to be insane and committed to the state hospital at Agnews, and that he had never been legally discharged therefrom. The facts of the case are undisputed, and show that Fleming was on the twenty-fifth day of August, 1909, by an order and judgment of the superior court of the county of San Benito, declared to be insane and so far disordered in mind as to endanger health, person and property. By said order and judgment he was committed to the state hospital at Agnews for treatment. Shortly after being committed and delivered to said hospital, that is, on September 8, 1909, he escaped therefrom and was never thereafter apprehended or returned to said hospital. On March 31, 1912, there was filed with the secretary of the board of managers of the Agnews State Hospital a purported discharge of said Fleming from said hospital, and on April 8, 1912, there was filed in the office of the county clerk of said county of San Benito a certified copy of said purported discharge, which said certified copy, together with the certification thereof, is in the following words and figures:

"Agnews State Hospital, Agnews, California.

"I, Leonard Stocking, Medical Superintendent of Agnews State Hospital, hereby certify that I do hereby discharge James F. Fleming, a patient at said State Hospital, committed from San Benito County, August 26th, 1909, upon the ground that the said patient has recovered as provided in Sub. 1, Section 2189 Political Code.

"Dated March 31, 1912.

"LEONARD STOCKING,
"Medical Superintendent.
"By GEO. B. WATERHOUSE,
"Secretary.

"State of California,
"County of Santa Clara.

"I, L. M. Simonsen, Secretary of the Board of Managers of Agnews State Hospital, hereby certify that I have compared the foregoing copy with the original certificate of discharge of James F. Fleming, the patient therein named, filed with me on the 31st day of March, 1912, and that the same is

a full, true and correct copy of such original and of the whole thereof.

"L. M. Simonsen,
"Secretary Board of Managers,
"Agnews State Hospital."

On March 1, 1923, almost eleven years after the filing of said certified copy in the office of the county clerk, said Fleming executed and delivered his promissory note for $1,500 and interest to the Yerba Realty Company, and at the same time and for the purpose of securing the payment of said promissory note he executed and delivered to James B. and Grace S. Feehan a trust deed to certain real property owned by him and situated in said county of San Benito. He later executed a second promissory note for $100.90 in favor of the Yerba Realty Company, which was also secured by the terms of said trust deed. On June 7, 1923, Fleming died and thereafter Joseph A. Fleming. was appointed the administrator of his estate. On June 13, 1923, said administrator instituted this action. Since the entry of the judgment herein said Joseph A. Fleming has resigned as such administrator and R. Shaw was appointed administrator of said estate in place of the said Joseph A. Fleming, and the said R. Shaw has been regularly substituted as the plaintiff herein.

It is not contended that Fleming at the time he executed the said notes and trust deed was not in full possession of all his mental faculties, neither is it contended that any advantage was taken of him or that any fraud was practiced upon him in the transaction involving said notes and trust deed, nor is it contended that he did not receive full and adequate consideration for the execution and delivery of said notes and deed.

Section 40 of the Civil Code is as follows: "After his incapacity has been judicially determined, a person of unsound mind can make no conveyance or other contract, nor delegate any power or waive any right, until his restoration to capacity. But a certificate from the medical superintendent or resident physician of the insane asylum to which such person may have been committed, showing that such person had been discharged therefrom, cured and restored to reason, shall establish the presumption of legal capacity in such person from the time of such discharge."

Section 2189 of the Political Code prescribes the manner in which a patient committed to one of the hospitals of this state for the insane may be discharged therefrom. At the time Fleming was discharged from the Agnews State Hospital, as claimed by appellants, this section read in part as follows:

"The superintendent of a state hospital on filing his written certificate with the secretary of board of managers, may discharge any patient, except one held upon an order of a court or judge having criminal jurisdiction in an action or proceeding arising out of a criminal action or proceeding arising out of a criminal offense, at any time, as follows:

"A patient who, in his judgment, has recovered. . . .

"When any person is discharged as recovered from a state hospital a copy of the certificate of discharge duly certified by the secretary of the board of managers, may be filed for record with the clerk of the superior court of the county from which said person was committed. The clerk shall record the same in a book kept for that purpose and shall keep an index thereof. No fees shall be charged by the clerk for performing such duties. Such certified copy of such certificate and the record of the same shall have the same legal effect as the original, and if no guardian has been appointed for such person as provided by sections 1763 and 1764 of the Code of Civil Procedure, such certificate, duly certified copies thereof and such record thereof shall have the same legal force and effect as a judgment of restoration to capacity made under the provisions of section 1766 of the Code of Civil Procedure.

The trial court concluded that the requirements of section 2189 of the Political Code relating to the discharge of persons committed to a hospital for the insane had never been complied with, in so far as Fleming's purported discharge had been brought about, and therefore held, in accordance with the terms of section 40 of the Civil Code, that Fleming at the date he signed the promissory notes and trust deed involved herein was legally incapable of executing said instruments by reason of this previous order and judgment adjudicating him to be insane. This decision of the trial court was in accordance with the contention of the respondent made in said court, and now made here for the purpose of sustaining said judgment. The basis of re-

spondent's said contention is that the written certificate filed with the secretary of the board of managers of the Agnews State Hospital, which purported to discharge Fleming as cured, was not signed by the superintendent of said hospital but by Geo. B. Waterhouse, his secretary; that there was no law authorizing the secretary of the superintendent to sign such a certificate; and therefore said certificate was and is void and of no effect in so far as it purported to be a discharge of Fleming from said hospital.

The provision of section 2189 of the Political Code regarding this certificate of discharge declares that "The superintendent of a state hospital on filing his written certificate with the secretary of managers, may discharge any patient." Nothing is said in this or any other section of the code that this certificate shall be signed by the superintendent, although in our opinion the natural inference to be drawn from the language used is that it should bear the signature of that official. This does not mean that in all cases it must be actually and personally signed by the superintendent. If his signature thereto is affixed by his secretary, or by any other person under his direction and authority, the signing of said instrument would be the act of the superintendent himself. There is no showing that the superintendent did not authorize and direct his secretary to sign his name to the discharge of Fleming. From the surrounding circumstances it must be assumed that such authority and direction were actually given by said superintendent to his secretary. The certificate was accepted for filing by the secretary of the board of managers of said hospital. It appears that the hospital authorities recognized this certificate to be regularly issued, as no attempt, so far as the record shows, was ever made to apprehend Fleming for the purpose of restoring him to the custody of said authorities. A copy of said certificate of discharge, duly certified by the secretary of said board of managers, was regularly issued and recorded in the office of the county clerk of the county of San Benito. Nothing was ever done thereafter by said authorities or by the officials of said county, or by anyone else during the lifetime of Fleming, a period of almost eleven years as we have already seen, to set aside said discharge or to re-incarcerate Fleming under the judgment committing him to said hospital. The only inference to be drawn from these acts of

the hospital authorities is that they recognized this certificate of discharge as one issued by the superintendent himself. It must be assumed that the superintendent, who is the chief executive officer of the hospital (Pol. Code, sec. 2153), was thoroughly conversant with the acts of his subordinates and therefore if he had not previously expressly authorized the signing of his name to said. certificate by his secretary, that he acquiesced and approved such practice and thereby ratified the act of his secretary in filing the certificate with his own name signed thereto by his secretary. Respondent cites the cases of *Warren* v. *Ferguson,* 108 Cal. 535 [41 Pac. 417], and *Rauer* v. *Lowe,* 107 Cal. 229, 232 [40 Pac. 337] in support of his contention that the certificate not having been signed by the superintendent, or one empowered by law to act for said superintendent, is void. These were cases involving street assessments, where the proceedings were *in invitum* and which were invalid if the statute under which said proceedings were taken was not strictly complied with. We do not think that the same rule should apply in proceedings for the release of a patient from an insane asylum where the result of such a release would be the restoration of the patient to his liberty and freedom. It is therefore our opinion that the certificate of discharge in the case of Fleming was not invalid by reason of the facts shown in this case.

It is further contended by respondent that the superintendent had no jurisdiction to release Fleming, he not being an actual inmate of said hospital at the time of said release. This question was before this court in *People* v. *Geiger,* 116 Cal. 440, 441 [48 Pac. 389]. In that case the defendant, while an inmate in an insane asylum of this state to which he had been regularly committed by order of court, escaped therefrom. He was never retaken. The resident physician, being of the opinion before his escape that the patient had been fully restored, intended to discharge him. Very shortly after his escape the resident physician had an appropriate record made of the discharge of the patient as recovered. Upon this state of facts this court held, "The statute concerning the management of the asylum provides that the resident physician shall be the executive officer of the institution, and shall discharge such patients as, 'in his opinion, have permanently recovered their reason' (Stats. 1875–76, p. 135); and the fact that defendant had escaped

when his recovery was thus determined by competent authority, is no ground for impeaching such determination; the statute did not make his corporal presence a condition of the valid exercise of the power to discharge him. (See *Kellogg* v. *Cochran,* 87 Cal. 192 [12 L. R. A. 104, 25 Pac. 677].)'' Respondent relies upon *Aldrich* v. *Barton,* 153 Cal. 488 [95 Pac. 900], as laying down a different rule. The facts in that case are essentially different from those before us and from those before the court in *People* v. *Geiger, supra,* as will be readily seen from a reading of the following excerpt from the opinion found at page 496 of the reported case: "One who has for many years been away from the asylum, claiming, without opposition, to have been discharged by virtue of an order purporting to have that effect, and over whom the asylum authorities do not exercise, or claim the right to exercise any power or restraint whatever, cannot be said to be a 'patient' within the meaning of the law. Such was the condition of the plaintiff, as is found by the court on ample evidence." In that case this court held that the superintendent had no jurisdiction to grant to such a person a discharge for the reason that a prior discharge had been issued to the patient, which, "whether valid or not, was treated as effectual by the asylum authorities and by the plaintiff."

We find nothing in the statute which would deprive the superintendent of the power to grant a discharge to a patient who had escaped from the hospital, and who was absent therefrom at the time of the granting of said discharge. In fact, this court held in *People* v. *Geiger, supra,* that a discharge granted under such circumstances was valid, and we see no reason to depart from the ruling announced by the court on that occasion.

■ The equities in this case are all on the side of the appellants. In good faith they have parted with their money or property in the belief that Fleming was competent to transact business, and that he was not under any restraint which would legally disqualify him from dealing with his property. A certified copy of his discharge had been on file in the office of the county clerk of the county in which the property described in the trust deed was situated for almost eleven years before the trust deed was executed. Presumably during this period of time Fleming had been

caring for said property and dealing with it as one competent to care for his own property. There is no evidence that Fleming ever had a guardian appointed either of his person or his property. We have before referred to the fact that the respondent does not seek to avoid said notes and trust deed on the ground that Fleming was mentally incompetent to transact business at the time of their execution. We must assume, therefore, that at the time of this transaction Fleming was in the full possession of all his mental faculties and was in every way mentally competent to transact business. It would require a very strong showing under these circumstances for a court to hold that because of some slight technical defect in Fleming's discharge from the Agnews State Hospital years before, the appellants in this case are to be despoiled of their money or property of which Fleming received the benefit during his lifetime. Such a case has not been made out. The discharge granted to Fleming in the words of Mr. Justice Sloss, in *Aldrich* v. *Barton, supra,* "whether valid or not, was treated as effectual by the asylum authorities." It must have been so treated by Fleming himself for the reason that after its issuance he assumed the care and management of his property, even to the extent of borrowing money thereon as evidenced by the execution and delivery of the notes and trust deed involved herein. To permit him or his personal representative under these circumstances to repudiate his acts to the detriment and loss of persons dealing with him in utmost good faith would be to countenance a most flagrant fraud against innocent persons. We do not feel called upon under the facts in this case to pursue such a course.

The judgment is reversed, with direction to the trial court to dismiss the action.

Richards, J., Seawell, J., Preston, J., Langdon, J., and Waste, C. J., concurred.