[Crim. No. 4974. In Bank. July 28, 1949.]

In re Margaret Jackson, on Behalf of JOHN A. ZANETTI, on Habeas Corpus.

James W. Harvey and Elmer C. Mower for Petitioner.

Fred N. Howser, Attorney General, Clarence A. Linn, B. Abbott Goldberg, Doris H. Maier, Deputy Attorneys General, and Charles J. McGoldrick, District Attorney (Sonoma County), for Respondent.

SCHAUER, J.—By this application for the writ of habeas corpus, Mrs. Margaret Jackson seeks the release of her brother, John A. Zanetti, hereinafter sometimes called the patient, who

is allegedly being unlawfully detained in the Napa State Hospital by the superintendent and medical director of that institution. His detention, it is contended, has been rendered unlawful as the result of a probate court order adjudging Zanetti sane and competent and revoking letters of guardianship previously awarded to Mrs. Jackson. This contention, as will hereinafter appear, is without merit.

On February 14, 1947, the patient was committed to the Napa State Hospital by order of the Superior Court of Sonoma County. Such commitment was upon proceedings had pursuant to provisions of division 6, part 1, chapter 1, of the Welfare and Institutions Code which provide for the commitment of "mentally ill persons who have been adjudicated by a court to be so psychotic as to be dangerous to themselves or to the person or property of others and are found to be in need of supervision, treatment, care and restraint" (Welf. & Inst. Code, § 5041). A hearing was had (Welf. & Inst. Code, § 5050.9) in which lay witnesses and medical examiners testified as to the patient's mental condition. On request of counsel the question of Mr. Zanetti's mental illness or insanity was submitted to a jury; on the issues there involved he was found "mentally ill." Judgment was rendered and an order of commitment filed. No action or proceeding has been had to challenge directly the initial validity of this judgment, to terminate its effectiveness, or to relieve the patient from its operation. ■ It is true that as a general rule "All persons are presumed to be sane until the contrary is proved" (14 Cal.Jur. § 19, p. 362), but it is also the rule that when insanity, other than "temporary or spasmodic," has once been finally adjudicated it "is presumed to continue unless the contrary is shown" (see 14 Cal.Jur. § 19, p. 363; 28 Am.Jur. § 121, p. 751; *Estate of Baker* (1917), 176 Cal. 430, 436 [168 P. 881]). ■ The Sonoma County judgment, therefore, remains, and will continue to remain, a valid and effective warrant for detaining the patient in the state hospital, or subject to parole therefrom, until and unless he is discharged by the medical superintendent of such hospital (see Welf. & Inst. Code, § 6729 et seq.) or until his right to release from such detention or supervision has been adjudged by a court of competent jurisdiction in a proceeding directed to that end (see Welf. & Inst. Code, § 6620; Pen. Code, § 1473; Cal. Const., art VI, § 4; *In re Buchanan* (1900), 129 Cal. 330, 332 [61 P. 1120, 50 L.R.A. 378]; *Kellogg* v. *Cochran* (1890), 87 Cal. 192, 197 [25 P. 677, 12 L.R.A. 104]).

On April 24, 1947, the Superior Court of San Francisco, on application of Mrs. Jackson, and pursuant to Probàte Code, sections 1460-1462, adjudged the patient insane and incompetent and awarded the petitioning sister letters of guardianship. Section 1460 of the Probate Code provides: "Any superior court to which application is made . . . may appoint a guardian for the person and estate or person or estate of an insane or incompetent person. As used in this division of this code, the phrase 'incompetent person,' 'incompetent,' or 'mentally incompetent,' shall be construed to mean or refer to any person, whether insane or not, who by reason of old age, disease, weakness of mind, or other cause, is unable, unassisted, properly to manage and take care of himself or his property, and by reason thereof is likely to be deceived or imposed upon by artful or designing persons."

Zanetti was paroled[1] from the state hospital, under the Sonoma County commitment, on January 19, 1948. In November, 1948, while he was on leave of absence from the hospital on such parole, his sister proceeded in the Superior Court of the City and County of San Francisco, under section 1470 of the Probate Code, to have him restored to competency and to revoke the letters of guardianship theretofore issued to her by that (the San Francisco) court. The petition alleged the incompetency adjudication by the San Francisco court and the ensuing appointment of the sister as guardian of the incompetent; it further alleged that Zanetti was of "sound mind and competent and fully capable of taking care of himself and managing his property." It made no reference to the Sonoma County commitment or to the issues adjudicated in that proceeding. Notice of the hearing in this guardianship matter was mailed to Mrs. Jackson and to the patient; no notice was given to the Napa Hospital superintendent. Present at the proceedings were Zanetti, his sister, and a Dr. John Scamenti. After preliminary questions relating to identification, the following are the only material questions which were asked regarding Zanetti's condition. The court asked Dr. Scamenti: "Q. What is his condition at the present time? A. His condition at the present time is one of recovery—— Q. (interrupting) Has he improved to the extent that you feel that he should be restored to capacity? A. Yes. Q. Do you think that

---

[1]The word "parole" as used in relation to patients committed to a state hospital means "leave of absence" (Welf. & Inst. Code, § 6725.5); it may be granted by the superintendent under general conditions prescribed by the Department of Mental Hygiene (*id.*, § 6726).

he can attend to his own affairs? A. Yes. Q. And that he would not be taken advantage by artful or designing persons if he were restored to capacity? A. Yes." The court added: "I think that is sufficient basis for a restoration to capacity— this Doctor has been attending him, and his sister is in a position to know his condition." Upon the above recited showing Zanetti, on November 18, 1948, was adjudicated sane and competent, "capable of managing and taking care of himself and his property," and restored to capacity by the Superior Court of San Francisco.

On December 2, 1948, Zanetti's parole was revoked; he was apprehended and returned to the Napa State Hospital. Demand for his release from the hospital was made to the medical superintendent on December 6, 1948, and was refused. Thereafter, on December 21, 1948, Mrs. Jackson filed a verified petition for a writ of habeas corpus in the Superior Court of Napa County. In the return to the writ the hospital super- intendent relied on the February 14, 1947, judgment of com- mitment. A hearing was had and the writ was denied. A similar petition was filed in the District Court of Appeal on January 20, 1949, and was denied without opinion.

The application for the writ to this court states: ". . . John A. Zanetti was . . . summarily reconfined in the said Napa State Hospital as a mentally ill person without benefit of any legal process whatsoever. That the said Theo K. Miller [superintendent of the Napa State Hospital] . . . held and does now hold said John A. Zanetti in confinement and re- straint, notwithstanding the fact that the said John A. Za- netti was at said time and place and is now sane and com- petent under and by virtue of an adjudication of his 'legal condition' as a sane and competent person by a Superior Court of this State, in and for the City and County of San Fran- cisco . . ." The "adjudication" referred to is the revocation of letters of guardianship and restoration to capacity in the proceeding under the Probate Code. Petitioner does not allege that Zanetti is not "so psychotic as to be dangerous" to him- self "or to the person or property of others" or that he is no longer mentally ill, or that he has recovered to the degree that he is no longer in need of supervision, treatment, care or restraint. At the oral argument petitioner specifically dis- claimed any desire to amend her petition and asserted that she chose to rely exclusively upon the adjudication by the San Francisco court restoring the ward to competency and discharging the guardian. It is clear, therefore, that the

petitioner does not ask for a factual determination of present sanity but relies on the guardianship adjudication of November 18, 1948, by the Superior Court of San Francisco, as conclusive upon the superintendent of Napa State Hospital that Zanetti is sane and as terminating the operation or effectiveness of the Sonoma County Superior Court judgment. The position of petitioner is further evidenced by the statement in her petition: ''That the original order for the commitment of . . . JOHN A. ZANETTI . . . on the 14th day of February, 1947, was superseded and nullified by the subsequent judgment of the [San Francisco superior court] . . . which had acquired jurisdiction of the guardianship of the person and estate of . . . ZANETTI upon petition of Margaret Jackson, his sister, when letters of guardianship were issued to her . . .'' The question before us is, therefore, exclusively one of law.

■ The law governing insane and incompetent persons in the State of California is primarily statutory. An examination of the statutes involved and the cases relevant thereto will serve to indicate the definitive variants of the term ''insanity'' and the possibility of its use in different situations. Among others can be noted: (1) insanity or incompetency with relation to capacity to contract (Civ. Code, §§ 38-40); (2) insanity or incompetency with relation to capacity to make testamentary disposition (Prob. Code, § 20; *Estate of Worrall* (1942), 53 Cal.App.2d 243 [127 P.2d 593]; *Estate of Baker* (1917), 176 Cal. 430, 436 [168 P. 881]); (3) insanity with relation to capacity to commit crime (Pen. Code, § 26); (4) insanity as ''mental illness'' which warrants confinement under provisions of Welfare and Institutions Code, division 6; and, (5) insanity or incompetency pursuant to which, under Probate Code, section 1460, letters of guardianship are issued. ''Insanity'' may and does mean a variety of different things. Depending on the pertinent statute, a variety of issues of fact can be the subject of litigation. And, depending on which statute is invoked, the parties to the litigation are different and the results obtained are to different ends.

This difference in issues has been recognized and considered in a number of cases. The early case of *Kellogg* v. *Cochran* (1890), *supra*, 87 Cal. 192, determined that under Probate Code, section 1470 (at that time Code Civ. Proc., § 1766 et seq.), the probate court, in revoking letters of guardianship,

could restore only that which it had taken away, namely, it could determine that a guardian was no longer necessary and that the incompetent could now adequately take care of himself and his property. Said the court (p. 197 of 87 Cal.):

". . .[I]t seems clear that the proceeding against insane and other mentally incompetent persons, authorized by the Code of Civil Procedure, is entirely distinct from the proceedings authorized by the Political Code [now Welf. & Inst. Code] for the commitment of insane persons to the state insane asylum. . . . The application of . . . [Prob. Code, § 1470] to persons committed to the asylum would be utterly inconsistent with the government of those institutions according to the requirements and regulations of the [Welf. & Inst. Code]. . . . After a person has been committed to either of the asylums on a charge of insanity, and received into the asylum, no court in this state is authorized to discharge him therefrom, or to restore him to the capacity of a sane person, under any circumstances, except upon a writ of *habeas corpus*. The power to discharge him otherwise than upon *habeas corpus* is vested exclusively in the officers of the asylum."

In the same manner *Aldrich* v. *Superior Court* (1898), 120 Cal. 140 [52 P. 148], and *Aldrich* v. *Barton* (1908), 153 Cal. 488 [95 P. 900], recognized these two statutes as mutually exclusive. (See, also, *Knorp* v. *Board of Police Commissioners* (1916), 31 Cal.App. 539 [161 P. 12].) Discharge from a mental institution does not in itself warrant discharge of a guardian (*In re Des Granges* (1929), 102 Cal.App. 592 [283 P. 103]; *Guardianship of Gordon* (1943), 56 Cal.App.2d 523, 527 [132 P.2d 824]) and, conversely, appointment of a guardian does not in and of itself warrant confinement in an institution (*Sullivan* v. *Dunne* (1926), 198 Cal. 183, 193-194 [244 P. 343]). Similarly, appointment of a guardian puts an incompetent under a disability to contract (Civ. Code, § 40; *Hellman etc. Bank* v. *Alden* (1929), 206 Cal. 592, 604-605 [275 P. 794]) but, despite commitment to an institution, the patient's power to contract is left unimpaired (*Fetterley* v. *Randall* (1928), 92 Cal.App. 411, 416 [268 P. 434]). With reference to release from an institution or the discharge of a guardian it is pointed out in 28 American Jurisprudence, pages 679-680, that "The courts have largely relied upon the opinions of qualified physicians and alienists in testing the advisability of discharging those confined to insane asylums, but have, at the same time, recognized that the determinant factors in such situations are not necessarily the same as those

which decide the discharge of a committee or guardian of an incompetent. In the latter instance, entirely different considerations are involved from those which arise in discharging the person of a lunatic from custody.''

██ Limiting our discussion to the two codes involved in this decision, then, it is clear that the proceedings for commitment under the Welfare and Institutions Code and the guardianship proceedings under the Probate Code are two dissimilar and separate proceedings and an order restoring to capacity one who has had a guardian does not entitle him to release from the state hospital when he is held by commitment under the first mentioned code. ██ Proceedings pursuant to the provisions of the Probate Code (see § 1460, quoted above) are designed to protect an incompetent who is for any reason mentally incapable of taking care of himself and of his property. The incompetency determined here need not be the result of insanity, e.g., ''mental illness,'' and no confinement is contemplated. Protection of the incompetent from others is the main purpose of the statute. (*Sullivan* v. *Dunne* (1926), *supra,* 198 Cal. 183, 190; *In re Des Granges* (1929), *supra,* 102 Cal.App. 592, 598.) ██ The proceedings pursuant to the Welfare and Institutions Code (see § 5041, quoted above), on the other hand, contemplate determination of the question whether the person is so mentally ill or deranged as to be *dangerous* to himself or others and, in order to protect society, a proper subject for commitment to the state hospital.

██ Petitioner contends that ''the restoration to the 'legal condition' or status of a sane and competent person may be accomplished under the Welfare and Institutions Code by a 'certificate of discharge as recovered' issued by the Medical Director of a State Hospital for the Insane, *if, but only if, no guardian has been appointed for such person*'' and from this premise argues that, hence, the court adjudication in the guardianship proceeding must be regarded as paramount. It is true that if the administrative officer issues a ''certificate of discharge'' and letters of guardianship are outstanding, the action of the administrative officer does not supersede or vacate or terminate the order of the court granting the letters; it would not necessarily and under the specified circumstances be the equivalent of a judicial determination that the ward was capable of managing his person and affairs. (*In re Des Granges* (1929), *supra,* 102 Cal.App. 592.) Cases which support this proposition of law, however, are not authority for

the further proposition, in effect that which is expounded by petitioner, that once a guardian has been appointed then the action by the judicial body (probate court) in the guardianship proceeding supersedes any earlier adjudication under the Welfare and Institutions Code, deprives the administrative officer of all authority in the premises and becomes the exclusive manner for restoration to sanity and competency in any and all of its variants.

Since the issues before the probate court in the guardianship proceeding did not encompass the issues which were determinative in the proceeding before the Superior Court in Sonoma County, and since it is under the commitment of the latter court that the respondent has acted, we are satisfied that petitioner has failed to make out a case.

For the reasons stated the writ is discharged and the patient is remanded to the custody of the superintendent of the state hospital at Napa.

Shenk, J., Carter, J., and Spence, J., concurred.

Edmonds, J., and Traynor, J., concurred in the judgment.